BASIC MEDIA, LTD., Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents, Gaffney Broadcasting Company, Intervenor.

BASIC MEDIA, LTD., Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee.

BASIC MEDIA, LTD., Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.

Nos. 76–1271, 76–1513 and 76–1514.

United States Court of Appeals, District of Columbia Circuit.

Argued April 1, 1977.

Decided June 8, 1977.

Norman E. Jorgensen, Washington, D. C., for petitioner.

Julian Rush, Counsel, F. C. C., Washington, D. C., for respondents.

Werner K. Hartenberger, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, Richard J. Bodorff, Counsel, F. C. C., and Edward E. Lawson, Atty., Dept. of Justice, Washington D. C., were on the brief, for respondents. Ashton R. Hardy, Gen. Counsel, F. C. C., Washington D. C., at the time the record was filed entered an appearance for respondents. Barry Grossman, Robert B. Nicholson, Samuel R. Simon and Carl D. Lawson, Attys., Dept. of Justice, Washington, D. C., also entered appearances for respondent United States of America.

Richard M. Riehl, Washington, D. C., with whom Michael H. Bader and Raymond C. Fay, Washington, D. C., were on the brief, for intervenor.

Before TAMM, LEVENTHAL and MacKINNON, Circuit Judges.

Opinion for the court filed by MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

The present appeal arises from three decisions of the Federal Communications Commission regarding FM radio licensing in and around Gaffney, South Carolina and Asheville, North Carolina. Basic Media, Ltd., appeals from the Commission's renewal of the FM-license of WAGI–FM (Gaffney, South Carolina, with broadcast tower in Forest City, North Carolina) (No. 76–1513), granting of an FM-license to a concern in Waynesville, North Carolina (No. 76–1514) (denial of reconsideration), and denial of Basic Media's request for an FM-license for Asheville, North Carolina (No. 76–1271) (denial of reconsideration). All three of these petitions revolve around the same issue: whether substantial evidence supported the Commission's decision to renew the existing FM-license for WAGI–FM, and, having granted the WAGI renewal to refuse to grant an exception to the 65-mile "short-spacing" rule so that Basic Media's proposed station could operate from Asheville, North Carolina, which is within

65 miles of WAGI's broadcast tower. This appeal is taken pursuant to 47 U.S.C. § 402(b) (1970).[1]

WAGI–FM has been broadcasting since 1959 from its tower midway between Forest City, North Carolina, and Gaffney, South Carolina. In 1970, the FCC granted approval for WAGI–FM to relocate its city of identification from Forest City to Gaffney while leaving its transmitter in Forest City. *In re Forest City, North Carolina, and Gaffney, South Carolina*, 26 FCC 2d 601 (1970). Had the transmitting tower moved to Gaffney, Basic Media's proposed station in Asheville, North Carolina, would have been outside the 65-mile limit. Alternatively, had WAGI–FM's 1975 request to renew been denied entirely, Basic Media would not be faced with the short-spacing problem. These two issues are really aspects of the same question: whether the Commission's decision to continue WAGI–FM's broadcasting arrangement should be sustained.

Basic Media did not participate in the 1970 decision permitting WAGI–FM's bifurcated broadcasting situation. The only issue it can now raise is whether, given that situation, WAGI–FM's petition to renew its license should be granted. On the record before the Commission, there was substantial evidence to grant the renewal (J.A. 216). Basic Media proposed that its service out of Asheville, North Carolina, would better serve the listenership currently served by WAGI–FM.

From the outset, Basic Media has a difficult case to make out because of the listenership numbers. If the WAGI–FM broadcast antenna were moved to Gaffney, the Commission found there would be a decrease in North Carolina listeners from 715,082 to 152,607 (J.A. 124). The increase in South Carolina listenership would only be from 288,073 to 338,434 (*id.*). All Basic Media can assert in response is that it would provide a North Carolina listenership of 152,633 (J.A. 125), but that would overlap at least in part the North Carolina listenership remaining for WAGI–FM. Hence, granting the Basic Media request would decrease the public served by over half a million persons.

■ In an attempt to overcome the strong persuasiveness of the numbers argument, Basic Media tried to demonstrate that the programming *quality* of WAGI–FM did not adequately serve the North Carolina listeners. WAGI–FM admittedly directs its programming to the needs and interests of the people of Cherokee County, South Carolina, in which is located its city of license, Gaffney, South Carolina. That alone is not proof, however, that it has ignored the needs and interests of the North Carolina listeners. The Commission found that many North Carolina listeners had grown accustomed to WAGI–FM, and that serious disruption would result from its replacement (J.A. 125–26).

■ Most importantly, however, the Commission is itself the best judge of an issue so incapable of quantification as quali-

---

1. Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

    (1) By any applicant for a construction permit or station license, whose application is denied by the Commission.

    (2) By any applicant for the renewal or modification of any such instrument of authorization whose application is denied by the Commission.

    *   *   *   *   *   *

    (4) By any applicant for the permit required by section 325 of this title whose application has been denied by the Commission, or by any permittee under said section whose permit has been revoked by the Commission.

    *   *   *   *   *   *

    (6) By any other person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any application described in paragraphs (1)–(4) of this subsection.

47 U.S.C. § 402(b)(1), (2), (4) & (6) (1970).

The Commission challenges the ripeness of the appeal of the Waynesville license (No. 76–1514) because of Basic Media's failure to seek review before the full Commission in accordance with 47 U.S.C. § 155(d)(7). Inasmuch as the resolution of the issues properly before this court in Nos. 76–1513 & 76–1271 entirely controls the appeal in No. 76–1514, no opinion is expressed on the question of Basic Media's failure to exhaust administrative remedies in No. 76–1514.

ty of service, and of compliance with its own guidelines (*see Primer on Ascertainment of Community Problems by Broadcast Applicants,* 27 FCC 2d 650 (1971)). In the absence of documentation of some specific failure to serve the actual needs of North Carolina listeners, rather than a general allegation that a station with a South Carolina city of license cannot adequately serve North Carolinians, the judgment of the Commission (J.A. 216, 220) must be affirmed.

Basic Media argues in the alternative that, even if the WAGI–FM license remains unchanged, the Commission ought to dispense with the 65-mile rule in this case. If the Commission would consider such an exception, Basic Media contends that it could then argue for the desirability of its own licensing at Asheville, North Carolina, rather than the FM-station proposed for Waynesville, North Carolina. The Commission had excluded Basic Media from consideration in the Waynesville hearing because of the short-spacing problem.

■ Any rule of general applicability will involve particular cases of hardship for which an agency would be empowered to make individual dispensations. *United States v. Allegheny-Ludlum Steel Corp.,* 406 U.S. 742, 755, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972). When an agency begins to grant exceptions in certain cases, however, interests represented in other cases can ask a court to review the denial of an exception as arbitrary in light of the agency's past practice. A different case is presented where an agency has made a general rule from which it has *never* deviated. Preserving the integrity of a general rule then takes on increased importance, if only because the certainty and administrative ease that accompany consistent application increase with each additional instance. "In this manner, one of the foremost advan-

tages of rulemaking—the formulation and effectuation of agency policy with a minimum expenditure of time and resources—will not be undermined by the necessity for continuous case-by-case adjudication." *Industrial Broadcasting Co. v. FCC,* 141 U.S. App.D.C. 247, 250, 437 F.2d 680, 683 (1970).

■ When an agency decides to make an exception to the general rule, it is also subjecting itself to careful scrutiny by a reviewing court, and will be required to have stated the reasons for the exception clearly on the record. "[W]hile administrative agencies can . . . fashion exceptions and qualifications, they must explain departures from agency policies or rules apparently dispositive of a case." *Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255, 1264 (4th Cir. 1974). "[A]dministrative agencies should be bound by their own rules and regulations, so that an agency's power to suspend its own rules . . . must be closely scrutinized especially where the substantive rights of a party in the administrative process may be adversely affected." *Safety-Kleen Corp. v. Dresser Industries, Inc.,* 518 F.2d 1399, 1403 (Cust.&Pat.App. 1975).[2] Further, granting exceptions can lead to a claim of vested interest, potentially applicable at a later time, *cf. WAIT Radio v. FCC,* 148 U.S.App.D.C. 179, 185, 459 F.2d 1203, 1209, *cert. denied,* 409 U.S. 1027, 93 S.Ct. 461, 34 L.Ed.2d 321 (1972). Hence, if an agency wishes to apply a general rule in a perfectly consistent manner, it must be admitted that such conduct alone automatically presents a number of good reasons to recommend it.

■ Simply as an applicant for a waiver, let alone an applicant for an exception to a previously uniformly followed rule, Basic Media has a very substantial burden. We held in *Industrial Broadcasting Co. v. FCC, supra,* 141 U.S.App.D.C. at 250, 437 F.2d at 683:

2. *See also Mary Carter Paint Co. v. FTC,* 333 F.2d 654, 660 (5th Cir. 1964) (concurring opinion):

Our complex society now demands administrative agencies. The variety of problems dealt with make absolute consistency, perfect symmetry, impossible. And the law reflects

its good sense by not exacting it. But law does not permit an agency to grant to one person the right to do that which it denies to another similarly situated. There may not be a rule for Monday, another for Tuesday, a rule for general application, but denied outright in a specific case.

[R]eviewing courts are naturally hesitant to require an agency to carry out extensive waiver proceedings once it has carefully promulgated a general rule. Thus, a heavy burden traditionally has been placed upon one seeking a waiver to demonstrate that his arguments are substantially different from those which have been carefully considered at the rulemaking proceeding.

*See also WAIT Radio v. FCC, supra,* 148 U.S.App.D.C. at 183, 459 F.2d at 1207 (1972). Basic Media has not sustained that burden. The Federal Communications Commission first promulgated its short-spacing rule for FM radio stations in 1963, after full rulemaking procedures had been followed. *See Revision of FM Broadcast Rules,* 40 FCC 662, 666 (1963) (relying on experience under flexible rules for AM stations to deny flexibility for FM). Since then, the Commission has allowed some leniency for existing stations, but has *without exception* refused to permit the licensing of a new station that violated the short-spacing rule. The Commission's Memorandum and Opinion in No. 76–1271 (J.A. 119) carefully recites the history of the short-spacing rule, concluding that "the integrity of the entire present FM plan in use requires strict adherence to the separation requirements and .. . . the overall advantages of strict adherence outweigh any advantages that might accrue from departure therefrom in individual cases" (J.A. 127). Basic Media has presented no compelling reason for overcoming the FCC's reliance on its unbroken practice. Whatever persuasiveness might be found in the peculiar needs of the Asheville, North Carolina region is substantially undercut by the Commission's finding that Asheville is already directly served by four AM stations, and that four FM stations from neighboring communities carry over into Asheville.

■ There is substantial evidence in the record supporting the Commission's decision to award a renewed license to WAGI–FM, and to exclude Basic Media's proposed station at Asheville because of the short-spacing rule. Basic Media's objection to the granting of the Waynesville license was premised on the alternative desirability of the Asheville station; hence that objection drops away as well. The three decisions of the Federal Communications Commission are affirmed in their entirety.

*So ordered.*