**Aixa O. Vda DE BERRIO**

v.

**UNITED STATES of America.**

**Civ. A. No. 79–451–B.**

United States District Court, Canal Zone, Balboa Division.

July 28, 1980.

Pierce & Kiyonaga, Balboa, Panama, for plaintiff.

Frank J. Violanti, U. S. Atty., and William H. Beatty, Asst. U. S. Atty., Balboa, Panama, for defendant.

SEAR, District Judge.

Plaintiff, Aixa O. Vda De Berrio, a citizen of the Republic of Panama and a resident of Chorrera, Panama, has brought suit against the United States under the Federal Tort Claims Act (FTCA)[1] for the wrongful death of her husband, Deoglides Berrio Arias. She alleges that he visited the outpatient clinic at Gorgas Hospital, operated by the Government of the Canal Zone,[2] on October 27, 1978 complaining of various ailments, including a temperature of 105.2 degrees. She further alleges that the attending physician merely prescribed Tylenol for her husband and failed to schedule any further appointments for him. Berrio's condition deteriorated and he died on October 31, 1978, allegedly due to the misdiagnosis of his illness by the hospital physician. On September 27, 1978 plaintiff submitted an administrative claim pursuant to 28 U.S.C. § 2675(a) in the amount of $750,000 to the Claims Branch of the Canal Zone Government/Panama Canal Company.[3] Although the Claims Branch had not yet formally acted upon her claim, she nonetheless filed this suit three days later.[4] The Government thereafter moved to dismiss, arguing that the complaint was filed prematurely and that I therefore lack subject matter jurisdiction over it.

The FTCA requires that before any tort suit can be filed against the United States, the injured party must first present a formal claim to the appropriate federal agency, and that agency must finally deny the claim in writing. However, if the federal agency fails to make a final disposition of the claim within six months, the failure may be deemed by the claimant to be a final denial permitting him to file suit.[5] The Claims Branch has never denied plaintiff's claim in writing,[6] and only three days passed from the filing of the claim to the filing of this suit. Since the requirement of a final written denial by the agency is

---

1. 28 U.S.C. § 2671 *et seq.*

2. The Canal Zone Government, which was abolished by the Panama Canal Treaty of 1977, Art. III, § 10, was an independent agency of the United States charged with the civil government of the Canal Zone. 2 C.Z.C. § 31.

3. By the Act of September 26, 1950, 64 Stat. 1041, Congress created a federally chartered company, the Panama Canal Company, to conduct all business activity connected with the operation of the Panama Canal. All remaining civil governmental functions were to be performed by the Canal Zone Government, an independent federal agency. 2 C.Z.C. §§ 31 and 61, *Gulf Oil Corp. v. Panama Canal Company,* 407 F.2d 24, 29 (5th Cir. 1969). For reasons not apparent in any of the applicable statutes or regulations, all tort claims filed against either the Panama Canal Company or the Canal Zone Government were adjusted by one body, the Claims Branch of the Canal Zone Government/Panama Canal Company.

4. In an amendment to the complaint filed on November 5, 1979, plaintiff alleges that the administrative claim filed on September 27, 1979 had been denied by the defendant before suit was filed. Plaintiff's attorney has asserted that he reached an oral agreement with Thomas E. Spencer, then Chief of the Claims Branch of the Canal Zone Government/Panama Canal Company, that he would deny plaintiff's claim before October 1, 1979. Transcript of proceedings of February 29, 1980, p. 14. Spencer has denied the existence of any such agreement. *Id.* at 9. However, it is clear from the record that plaintiff's claim was never denied in writing as required by 28 U.S.C. § 2675(a), and therefore the existence of any verbal agreement between Spencer and plaintiff's attorney is of no moment.

5. 28 U.S.C. § 2675(a).

6. See note 4, *supra.*

jurisdictional and cannot be waived, I would be constrained under ordinary circumstances to grant the government's motion and dismiss the plaintiff's suit as premature. *Employees Welfare Committee v. Daws*, 599 F.2d 1375, 1378 (5th Cir. 1979). However, because the background of this case is so unusual, plaintiff's claim must be deemed as having been denied on September 27, 1979, the date it was submitted to the Claims Branch, and her suit as properly and timely filed.

Prior to October 1, 1979 the United States exercised sovereignty over the Canal Zone, an area of land and water on the Isthmus of Panama which had been granted to it by the Treaty of November 18, 1903 with the Republic of Panama.[7] In 1950 Congress created a civil authority called the Canal Zone Government and made it an independent agency of the United States charged with the performance of those duties connected with the civil government of the Canal Zone, including the administration of institutions such as Gorgas Hospital.[8] Because the Canal Zone Government was an agency of the United States, a person injured due to the negligent conduct of Canal Zone Government employees acting within the course and scope of their employment was entitled to sue the United States under the FTCA for redress if his administrative claim for relief was first rejected. Venue under the FTCA lies within the district where the tort occurred or where the plaintiff resides.[9] To Panamanian nationals and indeed almost all United States Citizens residing in the Canal Zone, the United States District Court for the District of the Canal Zone provided the only forum in which tort claims against the Canal Zone Government could be brought.

On October 1, 1979 the Panama Canal Treaty of 1977 entered into force, superseding the 1903 Treaty, and the United States recognized the sovereignty of the Republic of Panama over the area which had constituted the Canal Zone.[10] The Canal Zone Government and the Panama Canal Company were abolished, and the Treaty limited the civil jurisdiction of the United States Courts in the Republic of Panama to those cases pending on October 1, 1979 and barred them from exercising jurisdiction over new cases.[11] In subsequent legislation to implement the Treaty Congress created the Panama Canal Commission, an agency of the United States, to maintain and operate the Panama Canal,[12] and the United States assumed the assets and liabilities of the Panama Canal Company.[13] Immunity of the United States from suit was waived only for claims arising from accidents occurring in the Canal locks, and the implementing legislation provided venue for such suits in the Eastern District of Louisiana.[14] No provision was made for filing suit on claims still pending with the Claims Branch at the time of entry in force of the treaty, so that claimants residing in Panama or the Canal Zone were left without a forum in which to litigate their claims.

As October 1, 1979 approached, the impending abolition of this court's jurisdiction over new cases, combined with the FTCA's restrictive venue provisions and its requirement that an administrative claim be filed and denied before suit could be commenced, threatened to deprive most persons with tort claims pending against the Canal Zone

7. The treaty of 1903 can be found at 33 Stat. 2234. The area of United States sovereignty was formally designated the Canal Zone in 2 C.Z.C. § 1.

8. See note 2, *supra*.

9. 28 U.S.C. § 1402.

10. Panama Canal Treaty, Art. I, § 1(a) (superseding the 1903 treaty), Art. I, § 2 (designating the Republic of Panama as territorial sovereign over the area which constituted the Canal Zone).

11. *Id.* Art. III, § 10 (abolishing the Canal Zone Government and the Panama Canal Company), Art. XI, § 6 (restricting the jurisdiction of United States Courts).

12. 22 U.S.C. § 3611.

13. 22 U.S.C. § 3781.

14. 22 U.S.C. §§ 3771, 3776.

Government of the judicial remedy provided by the FTCA against the United States. In this case, as well as in virtually all others for injuries caused by the alleged negligence of employees of the Canal Zone Government, venue lies only in the District of the Canal Zone.[15] For that reason, had plaintiff's claim been denied in writing after October 1, 1979, she would have possessed a cause of action against the United States but lacked a court in which that cause of action could be asserted.

In late September, 1979 one attorney who represented several persons with tort claims pending before the Claims Branch recognized the conflict between statute and treaty and therefore requested that the Claims Branch issue immediate written denials of all his clients' claims without review of the merits. Such action would enable them to file suit under the FTCA in the District of the Canal Zone before the treaty became effective.[16] After considering the matter, General Counsel for the Panama Canal Company acceded to the attorney's request and instructed the Claims Branch to deny the claims of all persons represented by that attorney. However, General Counsel further determined that the Claims Branch should not deny any other pending tort claims unless specifically requested to do so by the claimant or his attorney. According to the testimony of the Deputy General Counsel, the denial of all pending claims would have been unfair to certain of the less sophisticated claimants, unrepresented by counsel, who had no intention of ever filing suit because they would take the administrative decision "as the last word" and not understand their right to pursue their claims in court.[17] Whatever the reason for it, this decision of General Counsel foreclosed the possibility of judicial relief against

the United States for virtually all claimants lacking the perspicacity to request an immediate denial of their pending administrative claim or to hire an attorney who would do so. These claimants were relegated to the judgment of the Claims Branch, from whose decision they could take no appeal.

In developing a procedure for the processing of tort claims, the Claims Branch must be allowed considerable discretion. Formulation of administrative procedures, even within those entities such as the Canal Zone Government which are not subject to the requirements of the Administrative Procedure Act,[18] is generally left to the discretion of the agency, to whom Congress has delegated the responsibility for making substantive determinations. See *Vermont Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 524–25, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). However, this discretion is limited, for the agency must "make a reasoned choice of alternatives within a class of permissible actions." *Pillai v. Civil Aeronautics Board*, 485 F.2d 1018, 1030 (D.C.Cir. 1973). Arbitrary and capricious agency action, not based on consideration of all relevant factors or manifesting a clear error of judgment, constitutes an abuse of discretion and may be corrected by a reviewing court. See *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *Pillai, supra*.

In September, 1979, as the date for entry into force of the Treaty approached, the Claims Branch upon the instruction of General Counsel for the Panama Canal Company, determined that it would review and decide all tort claims pending against the Canal Zone Government in due course un-

---

**15.** In those rare instances where the plaintiff resides within another judicial district, suit could also be filed in that district.

**16.** Transcript of proceedings of February 29, 1980, pp. 11–12.

**17.** *Id.* It is not clear from the record why General Counsel for the Panama Canal Company determined the procedure for disposition of tort claims against the Canal Zone Govern-

ment, an entirely separate entity. See note 3, *supra*.

**18.** The Administrative Procedure Act is codified at 5 U.S.C. § 551 *et seq.* Both 5 U.S.C. § 551 and 5 U.S.C. § 701 exempt "the governments of the territories or possessions of the United States" from the definition of "agency" as that term is used in the Administrative Procedure Act.

less the claimant or his attorney specifically requested immediate denial, in which event it would acquiesce in the request. It thereby partially usurped Congress' responsibility for deciding who may file lawsuits in tort against the United States. Moreover, in reaching its decision, it distinguished among claimants based upon a factor having nothing to do with the merits of the various claims. The purported justification for this distinction, that certain claimants were unlikely to file suit no matter the nature of the administrative decision, was grounded upon nothing more than the subjective beliefs of General Counsel. At the very least the Claims Branch might have contacted all those with pending claims, as it in fact did for one class of claimants, informed them that they would lose their right to sue the United States unless their claims were denied immediately, and allowed the claimants to decide for themselves whether they wanted the Claims Branch to deny their claims to enable them to file suit.

The jurisdictional and venue obstacles to suit imposed by the conflict between the FTCA and the Panama Canal Treaty affected almost all persons with tort claims pending against the Canal Zone Government in September, 1979, yet the Claims Branch chose to favor only a select few from this group. Whenever an agency grants exceptions to a general rule, it subjects itself to close scrutiny by a reviewing court. See *Basic Media, Ltd. v. Federal Communications Commission*, 559 F.2d 830, 833 (D.C.Cir. 1977). There is no reasonable justification for the distinction drawn here by the Claims Branch. Having determined that those persons who so requested could have their claims immediately denied, it could not rationally fail to grant the same option to all other claimants, including plaintiff. The Claims Branch failed to choose reasonably from the available alternatives, thereby abusing the discretion granted it to establish procedures for the adjustment of tort claims against the Canal Zone Government. *Pillai, supra.*

19. Transcript of proceedings of February 29, 1980, p. 2.

The record discloses that had she been given the choice, plaintiff would have requested the Claims Branch to deny her claim so as to preserve her right to sue under the FTCA.[19] Therefore, it is necessary that I correct the agency's abuse of discretion by deeming the plaintiff's administrative claim as having been denied when filed on September 27, 1979 and her suit as having been timely filed on September 30, 1979. Accordingly,

IT IS ORDERED that defendant's Motion to Dismiss is DENIED.