**Donna McCLAIN, Mother and Personal Representative of the Deceased Minor, Ramon John Rasimowicz, Plaintiff-Appellant,**

v.

**PANAMA CANAL COMMISSION, A U.S. Executive Agency, Defendant-Appellee.**

No. 86–3514.

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1987.

Rehearing Denied Jan. 26, 1988.

John G. DeRussy, New Orleans, La., David J. Kiyonaga, Jacksonville, Fla., for plaintiff-appellant.

Renee' Clark McGinty, Glenn K. Schreiber, Asst. U.S. Attys., John Volz, U.S. Atty., New Orleans, La., for defendant-appellee.

Before RANDALL, WILLIAMS, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

In this action, plaintiff-appellant Donna McClain (McClain) appeals the district court's entry of summary judgment for defendant-appellee Panama Canal Commission (Commission). McClain originally filed her personal injury damages claim with the

---

Commission, which refused to adjudicate it on grounds that the claim was barred by limitations and was for an amount in excess of the Commission's jurisdiction. The district court based summary judgment on the untimeliness of McClain's claim. We affirm without reaching the limitations question.

### Facts and Proceedings Below

On October 16, 1981, a vehicle owned by the Commission and driven by a Commission employee while acting within the scope of his duties struck and killed McClain's four-year-old son. The accident occurred in Diablo Heights, a townsite adjacent to Balboa, Panama, and within the area that had been the Panama Canal Zone. Under the Panama Canal Act of 1979, 22 U.S.C. §§ 3601 to 3871, the Commission, an executive branch agency, is authorized to settle personal injury or death claims against it. Section 3761. Almost three years after the accident, on August 3, 1984, McClain sent her initial letter to the Commission stating her intention to file a claim for damages arising from the death of her son. About a month later, on September 12, 1984, McClain filed a claim seeking damages for herself and on behalf of her deceased son in the total amount of $287,500.[1]

On November 7, 1984, the Commission replied that it could not adjudicate the claim for two reasons. First, the claim was untimely. Though the Panama Canal Act does not contain any limitations period for nonmaritime personal injury claims, the Commission had concluded that the Act did not repeal the limitations periods stated in the Canal Zone Code, which had been the governing law in the former Canal Zone. Under that Code, a one-year limitations period applied to personal injury and death cases. C.Z. Code tit. 5, § 42(5) (1963 & Supp.1976). The second reason for the

Commission's decision was that McClain's claim exceeded the Commission's settlement authority, which is limited to $50,000 for nonvessel-related claims. 22 U.S.C. § 3761(b).

On December 3, 1984, McClain wrote the Commission. She requested that it be more flexible in determining whether her claim was timely, especially in light of the unfamiliarity of the local bar and, allegedly, of the Commission in adjudicating claims under the relatively untested 1979 Act. She concluded by stating, "I will supplement this reconsideration for your final review" (however, it appears that McClain filed nothing further with the Commission). In a two-line "p.s." at the foot of this letter, McClain also stated that her "claim amount *can* be modified to bring it within the monetary limits of [22 U.S.C. § 3761]." (Emphasis added.) On February 20, 1985, McClain received an answer from the Commission reiterating *each* of its two reasons for refusing to adjudicate her claim (and adding that the Commission's choice of a limitations period was also influenced by the fact that Panamanian law provided a one-year limitations period for personal injury and death cases). McClain made no further filings with the Commission.[2]

On August 25, 1985, she filed a complaint in the United States District Court for the Eastern District of Louisiana seeking a judgment that would order the Commission to hear her claim. She asserted jurisdiction under 28 U.S.C. §§ 1331 and 1361. The defendants responded with a motion to dismiss for failure to state a claim or, alternatively, for summary judgment.

The district court held that it had jurisdiction under section 10 of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–

---

1. McClain apportioned her damages as follows:

| | |
|---|---|
| Pecuniary loss | $ 70,000 |
| Mental anguish and grief | 37,500 |
| Loss of companionship and society | 130,000 |
| Child's pain and suffering | 50,000 |
| | $287,500 |

2. There is no suggestion in the record that after the Commission's February 20 letter—which reiterated its jurisdictional amount conclusion—McClain ever amended her claim down to $50,-000 (or that she did so at any other time). Certainly, the Commission did not abuse its discretion in concluding that McClain never submitted a claim which did not exceed $50,000.

706,[3] and under the mandamus statute, 28 U.S.C. § 1361. The court granted the Commission's motion for summary judgment on grounds that the Commission was correct to apply a one-year limitations period and under that period McClain's claim clearly was time-barred.[4] In affirming the district court we do not find it necessary to reach the limitations question because of our view that the Commission's jurisdiction is limited to claims of $50,000 or less.

## Discussion

### I. The District Court's Jurisdiction

■ The district court had jurisdiction, at least to the extent below noted, over this lawsuit under the mandamus statute, 28 U.S.C. § 1361,[5] which we have stated waives, for some purposes, the sovereign immunity of the United States. See Huffs-tutler v. Bergland, 607 F.2d 1090, 1092 (5th Cir.1979); Beale v. Blount, 461 F.2d 1133, 1137–38 (5th Cir.1972). See also Jones v. Alexander, 609 F.2d 778, 781 (5th Cir.), cert. denied, 449 U.S. 832, 101 S.Ct. 100, 66 L.Ed.2d 37 (1980). The court should not look to the merits in deciding the jurisdictional question. Jones, 609 F.2d at 781. Instead, the court must accept as true all nonfrivolous allegations of the complaint. Id. McClain is not seeking money damages in this suit. More importantly, at least insofar as she seeks a determination that her claim was not, as the Commission ruled, without its subject matter jurisdiction by virtue of the $50,000 limitation of 22 U.S.C. § 3761(b), she seeks mandamus to require the Commission to take jurisdiction, not to dictate the results of its taking jurisdiction, and to perform a nondiscretionary duty imposed on it by law. This is the classic function of mandamus. Therefore, at least to this extent, the present lawsuit fits within section 1361's grant of jurisdiction (and, of course, we have appellate jurisdiction to the same extent under 28 U.S.C. § 1291). As we hold that the Commission correctly determined this issue of subject matter jurisdiction, it is unnecessary for us to determine whether section 1361 also affords jurisdiction to resolve the

3. McClain had not claimed the APA as a jurisdictional basis in her complaint and did not mention the APA until her Memorandum in Opposition to Defendant's Motion to Dismiss, or Alternatively for Summary Judgment, and in Support of Plaintiff's Motion for Summary Judgment. The district court was clearly wrong if it meant to hold that the APA is an independent basis for federal jurisdiction. E.g., Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977); American Ass'n of Councils of Medical Staffs of Private Hospitals, Inc. v. Califano, 575 F.2d 1367, 1370 (5th Cir.1978), cert. denied, 439 U.S. 1114, 99 S.Ct. 1018, 59 L.Ed.2d 72 (1979). On the other hand, the district court may simply have been agreeing with McClain that the APA waived any sovereign immunity limitation on the exercise of section 1331 jurisdiction, a jurisdictional basis alleged in McClain's complaint. See 5 U.S.C. § 702; Sheehan v. Army and Air Force Exchange Service, 619 F.2d 1132, 1138–40 (5th Cir.1980), rev'd on other grounds, 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982). As we will explain, the Panama Canal Act shields the Commission, an executive branch agency, from lawsuits seeking nonvessel-related personal injury or death damages. The Commission took the position below that this immunity also bars lawsuits like McClain's seeking to order the Commission to hear a claim. On that view, the APA's waiver of sovereign immunity would not apply because that waiver explicitly does not "affect[ ] other

limitations on judicial review." 5 U.S.C. § 702. In finding jurisdiction under the APA, the district court may simply have been rejecting the Commission's argument. Because we find that the district court had mandamus jurisdiction, 28 U.S.C. § 1361, it is not necessary for us to investigate or discuss whether jurisdiction also existed under 28 U.S.C. § 1331.

4. In holding that a one-year limitations period applied, the district court followed Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983), which stated that when federal civil law includes no limitations period, a suitable statute must be borrowed from some other source. The district court stated that even if the Panama Canal Act had no limitations period (apparently by not, in fact, legally adopting the Canal Zone Code limitations period, as the Commission had contended), the most appropriate statutes to borrow would be the one-year period stated in both the Canal Zone Code and Panamanian law for personal injury or death claims.

5. The mandamus statute states:
   "§ 1361. **Action to compel an officer of the United States to perform his duty**
   "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

statute of limitations issue, and we imply no view on that question.

## II. Should Mandamus Issue?

The writ of mandamus is issued only in "extraordinary situations." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). "[It] is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984); *see, e.g., Smith v. North Louisiana Medical Review Ass'n*, 735 F.2d 168, 172 (5th Cir.1984); *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir.), *cert. denied*, 449 U.S. 832, 101 S.Ct. 100, 66 L.Ed.2d 37 (1980). The Commission concedes that McClain has available no other avenue of relief, and so our focus is on whether the Commission had a clear duty to take subject matter jurisdiction of McClain's claim.

The Panama Canal Act of 1979, 22 U.S.C. §§ 3601 to 3871, created the Panama Canal Commission, section 3611, and gave it the authority to settle three types of claims. 22 U.S.C. §§ 3761 to 3779. First, the Commission may settle claims arising from the passage of vessels through the Canal locks, section 3771; second, the Commission may settle claims arising from the presence of vessels elsewhere in the Canal or its adjacent waters, section 3772; and third, the Commission "may adjust and pay claims for ... personal injury or death, arising from the operation of the Panama Canal or related facilities and appurtenances." Section 3761(a). McClain's claim falls in this third category.

■ As to this third category, section 3761(b) states, "No claim for an amount exceeding $50,000 shall be adjusted and paid by the Commission...." McClain's claim was for $287,000; hence, it was a claim that the Commission had no authority to "adjust." Because the Commission lacked subject matter jurisdiction over McClain's claim, it did not violate a "clear nondiscretionary duty" in refusing to adjudicate her claim. Therefore, McClain is not entitled to the writ of mandamus, and the district court acted properly in granting the Commission's motion for summary judgment. To explain our holding, we must highlight the various statutory schemes in effect over the years to settle claims arising from activities in the Panama Canal itself and in the Canal Zone.[6]

The Panama Canal Treaty of 1903 granted the United States powers of sovereignty in a ten-mile-wide strip of land across the Isthmus of Panama. Isthmian Canal Convention of 1903, United States-Panama, art. II, 33 Stat. 2234 (1903), 10 *Treaties and Other International Agreements of the United States of America 1776–1949* 663 (C. Bevans comp. 1972). The Panama Canal was built across this "Canal Zone."

In 1912, Congress passed the first Panama Canal Act. Panama Canal Act, ch. 390, 37 Stat. 560 (1912). The Act authorized the President to govern the Canal Zone "through a governor of the Panama Canal and such other persons as he may deem competent." Ch. 390, § 4, 37 Stat. 561. The Act authorized the President (through his representative, the Governor of the Panama Canal) to pay "claims for damages which may arise from injury to vessels, cargo, or passengers from the passing of vessels through the [canal] locks." Ch. 390, § 5, 37 Stat. 563. An unsatisfied claimant could bring suit in the United States District Court for the Canal Zone, *id.*, a court created by that Act, ch. 390, § 8, 37 Stat. 565. The 1912 Act waived sovereign immunity only for claims arising in the Canal locks. No provision was made for recovery—either in an administrative or judicial proceeding—on any other claim arising in the Canal itself, or in the Canal Zone. *See generally* Sear, *Historical Review*, 57 Tul. at 1369; H.R.Rep. No. 184,

---

**6.** Sources describing the legal history of the Panama Canal include Sear, *Historical Review of Treaty Relationships in the Canal Zone as to the Maritime Legal and Court System*, 57 Tul.L. Rev. 1368 (1983); *Golden Panagia S.S., Inc. v. Panama Canal Comm'n*, 557 F.Supp. 340 (E.D. La.1983), *aff'd*, 791 F.2d 1191 (5th Cir.1986); *De Berrio v. United States*, 495 F.Supp. 179 (E.D.La. 1980).

99th Cong., 1st Sess. 5 (1985) (discussing sovereign immunity under 1912 Act). In 1934, Congress adopted the Canal Zone Code. Canal Zone Code of Laws, ch. 667, 48 Stat. 1122 (1934). This first version of the Code carried forward the same limited exposure to liability stated in the Panama Canal Act of 1912. *See Compagnie Generale Transatlantique v. Governor of the Panama Canal*, 90 F.2d 225 (5th Cir.) (affirming dismissal of suit for damages arising from out-of-locks vessel accident), *cert. denied*, 302 U.S. 720, 58 S.Ct. 41, 82 L.Ed. 556 (1937).

In 1940, Congress amended the Canal Zone Code to expand the liability of the Governor of the Panama Canal. Canal Zone Code Amendments, ch. 358, 54 Stat. 387 (1940). The 1940 amendment gave the Governor power to settle claims arising from vessel accidents occurring in the waters of the Canal outside the Canal locks. This second category of claims was to be handled quite differently from the first category, however. The amendment stated, "[T]he Governor shall not adjust and pay any claim ... where the amount of the claim exceeds $60,000, but shall submit the same to the Congress by a special report containing the material facts and his recommendations thereon." Ch. 358, § 1, 54 Stat. 388. Congress simply gave the agency no authority to adjudicate claims in excess of $60,000. Moreover, there was no judicial remedy for a claimant seeking $60,000 or less, but who was dissatisfied with the Governor's award, or for a claimant seeking over $60,000, but who was dissatisfied with Congress' award.

The next expansion of liability came in 1946 with enactment of the Federal Tort Claims Act (FTCA), Ch. 753, §§ 401 to 424, 60 Stat. 842 (1946) (codified as amended at 28 U.S.C. § 2671 *et seq.*). The FTCA did not apply to "[a]ny claim arising from injury to vessels, or to the cargo, crew, or passengers of vessels, while passing through the locks of the Panama Canal or while in Canal Zone waters." Ch. 753, § 421(g), 60 Stat. 846 (repealed by Canal Zone Code Amendments, ch. 1049, § 13(5), 64 Stat. 1043 (1950)).[7] As we have seen, Congress already had waived sovereign immunity as to such claims in the 1912 Act and in the 1940 amendments to the Canal Zone Code. However, the FTCA *did* apply to other types of tort claims against the Governor of the Panama Canal, such as those arising in the Canal Zone proper. This was a third category of claims. *See De Berrio v. United States*, 495 F.Supp. 179, 181 (E.D.La.1980). The FTCA did not completely strip the immunity of the Governor of the Panama Canal for it did not apply to claims arising in foreign countries. Ch. 753, § 421(k), 60 Stat. 846 (now codified at 28 U.S.C. 2680(k)).

In 1950, Congress made the first organizational change in the operation of the Canal and Canal Zone since the 1912 Act. It transferred operation of the Canal itself from the Governor of the Panama Canal to the Panama Railroad Company (renamed the Panama Canal Company), a government-owned corporation that for decades had conducted various activities related to the Panama Canal, including the operation of a railroad across the Isthmus of Panama. Canal Zone Amendments, ch. 1049, 64 Stat. 1038 (1950). The 1950 Act also created the "Canal Zone Government," which was not directly concerned with operation of the Canal, but instead administered the civil government of the Canal Zone.

The 1950 Act made another significant change. It amended the Canal Zone Code to treat claims arising from out-of-lock vessel accidents just the same as claims arising from in-lock accidents. Ch. 1049, § 3, 64 Stat. 1039. No longer was it necessary

---

**7.** The 1950 repeal of this exclusion did not have the effect of expanding the liability of the United States for claims arising in the Panama Canal. In 1949, Congress had amended the FTCA to exclude any claim against the Panama Railroad Company. Act of July 16, 1949, ch. 340, 63 Stat. 444 (1949) (codified at 28 U.S.C. 2680(m)). The 1950 repeal of the original exclusion was part of the same Act that transferred control of the Canal to the Panama Railroad Company (renamed the Panama Canal Company). *See* discussion *infra* in text. After the 1950 changes, the exclusion added in 1949 for the Panama Railroad Company covered the same ground as the original 1946 exclusion quoted in the text, thus making the latter exclusion unnecessary.

for a claimant in the former category to seek relief from Congress if his claim exceeded $60,000; nor was judicial review of the Panama Canal Company's award precluded. Instead, the Panama Canal Company had authority to adjust claims of any size arising from out-of-lock or in-lock vessel accidents, and dissatisfied claimants in both categories could seek judicial relief in the United States District Court for the Canal Zone. Ch. 1049, § 3, 64 Stat. 1040; *see Gulf Oil Corp. v. Panama Canal Co.*, 407 F.2d 24, 28–30 (5th Cir.1969) (explaining Canal Zone Code's waiver of sovereign immunity of Panama Canal Company). Furthermore, because the Panama Canal Company (like the Panama Railroad Company before it) had power to "sue and be sued in its corporate name," C.Z. Code tit. 2, § 65 (1963 & Supp.1976), its liability extended even to claims not arising in the locks or waters of the Panama Canal. *See De Scala v. Panama Canal Co.*, 222 F.Supp. 931 (S.D.N.Y.1963) (longshoreman standing on pier injured when struck by heaving line tossed from Panama Canal Company vessel). The tort liability of the Canal Zone Government continued to be governed by the FTCA.

Because the FTCA does not apply to claims arising in a foreign country, 28 U.S.C. 2680(k), and because claims against the Canal Zone Government might arise from acts of its employees in Panama, *see* H.R.Rep. No. 1349, 93d Cong., 2d Sess. (1974), Congress in 1975 amended the Canal Zone Code to permit settlement of any personal injury or death claim "arising from the activities of the Canal Zone Government." C.Z. Code tit. 2, § 271 (1963), as amended by Act of Jan. 2, 1975, Pub.L. 93–610, 88 Stat. 1973 (1974). This expanded the liability of the Panama Canal Company to encompass even nonvessel-related claims arising in Panama; however, the award of the Canal Zone Government in such cases was final. No provision was made for judicial review. C.Z. Code tit. 2, § 271(b) (Supp.1976).

To recapitulate: At the time of the 1977 Treaty the Canal Zone Code recognized damage claims arising from (a) in-lock vessel accidents; (b) out-of-lock vessel accidents; (c) torts occurring in the Zone; (d) torts occurring outside the Zone. Categories (a) and (b) were explicitly excluded from the FTCA, *see Luckenbach Steamship Co. v. Panama Canal Co.*, 196 F.Supp. 835 (D.C.Z.1961), *aff'd* 303 F.2d 252 (5th Cir.1962), but under the Canal Zone Code the Panama Canal Company could settle claims of any amount in those two categories and a dissatisfied claimant could seek judicial relief. Category (c) was governed by the FTCA. Category (d) was explicitly excluded from the FTCA; under the Canal Zone Code, the Governor of the Zone could settle category (d) claims of any amount, but there was no judicial remedy.

In 1977, the United States and Panama agreed to a new treaty that abrogated the 1903 Treaty between the two countries. Panama Canal Treaty of 1977, United States-Panama, T.I.A.S. No. 10030. The Panama Canal Act of 1979 was the implementing legislation, and it took effect, along with the Treaty, on October 1, 1979. On that date, the Treaty gave the country of Panama the territory comprising the Canal Zone, and Panama "reassume[d] plenary jurisdiction" of the former Zone. 1977 Treaty, art. XI. Thus, there is no longer any Canal Zone Government. The 1979 Act also replaced the Panama Canal Company with a new executive agency: the Panama Canal Commission. 22 U.S.C. § 3611. The Commission is vested with the duty of maintaining and operating the Panama Canal "and the facilities and appurtenances thereto."

Like the Panama Canal Company, the Commission is liable for claims arising from in-lock vessel accidents, 22 U.S.C. § 3771, and out-of-lock vessel accidents, 22 U.S.C. § 3772. Like the Canal Zone Government, the Commission is liable for nonvessel-related tort claims—including personal injury or death claims—arising from its activities. 22 U.S.C. § 3761. This third category of claims, into which McClain's falls, is analogous to category (d) in the pre–1979 hierarchy described earlier. In fact, the language of 22 U.S.C. § 3761(a) closely tracks C.Z. Code tit. 2, § 271(a) (Supp.1976). (By eliminating the Canal

Zone, the 1977 Treaty effectively eliminated the category (c) claim.)

The 1979 Act treats claims arising from in-lock vessel accidents as they have been treated since the 1912 Act. Congress gave the Commission authority to settle claims of any size, Pub.L. No. 96–70, § 1411, 93 Stat. 485 (1979) (codified as now amended at 22 U.S.C. § 3771), and an aggrieved claimant may file suit in district court.[8] Congress changed the method for resolving claims arising from out-of-lock vessel accidents. Since 1950, these claims had been treated the same as in-lock accidents, but the 1979 Act reverted for out-of-lock vessel accidents to the scheme that had prevailed from 1940 to 1950. The Commission was given authority to settle any such claim not in excess of $120,000 (as opposed to the old limit of $60,000), Pub.L. No. 96–70, § 1412, 93 Stat. 485, but any such claim in excess of that amount had to be submitted to Congress, along with the Commission's report containing the material facts and a recommendation. Pub.L. No. 96–70, § 1415(b), 93 Stat. 486–87; see H.R.Rep. No. 96–98, 96th Cong., 1st Sess. 65 (1979), reprinted in 1979 U.S.Code Cong. & Admin.News 1034, 1068. The 1979 Act also changed the treatment of claims like McClain's—claims not arising from a vessel-related accident, but based on some other negligent Commission act. 22 U.S.C. 3761. Section 3761(b) provides as to non-vessel-related claims, "No claim for an amount exceeding $50,000 shall be adjusted and paid by the Commission...." Prior to 1979, there had not been any monetary limit on the size or settlement of this type of claim. These changes show that the 1979 Act partially reasserted the United States' sovereign immunity. Sear, Historical Review, 57 Tul.L.Rev. at 1371; O'Kane, Accidents in the Canal: Perspectives on the Claims Structure of the New Panama Canal Act, 15 J.Mar.L. & Com. 29 (1984).

It might be argued that in the 1979 Act Congress authorized the Commission to ad-judicate claims of any size, but simply forbade the Commission from paying more than $50,000. Such an argument is inconsistent with the language of section 3761(b) —"no claim for an amount exceeding $50,000 shall be adjusted"—which seems quite clearly to limit the Commission's power of adjudication to claims of $50,000 or less. The legislative history also indicates that Congress intended the $50,000 limitation on section 3761 claims to have the same effect as the $120,000 limitation on out-of-lock vessel accident claims. H.R.Rep. 96–98, 96th Cong., 1st Sess. 64, reprinted in 1979 U.S.Code Cong. & Admin.News 1034, 1067. In its section-by-section analysis of the 1979 Act, the House Report explicitly states that the provision now codified as section 3761(b) "limits the authority of the Commission to settlement of claims of [$50,000][9] or less...." Id. No indication is given that the Commission had full authority to hear claims of any size, with a limitation placed only on its power to pay more than a certain amount. Instead, the House Report, like the statute itself, leaves the unmistakable impression that Congress limited the Commission's jurisdiction to claims of a certain size. Without elaboration, the section-by-section analysis in H.R. Rep. 98 cites the "history of the limitation" applicable to out-of-lock vessel claims as an explanation for the dollar amount limitation on section 3761 claims. Id. As already discussed, that history reveals that the monetary limitation on out-of-locks vessel accident claims was a jurisdictional cap on the Panama Canal Governor's power to adjudicate the claim.

Additional support for our holding is found by charting the evolution of the claims settlements provisions of the 1979 Act. The Senate initially took quite a more generous attitude toward claims than did the House. The Senate's version of H.R. 111 (which eventually became the 1979 Act) made hardly any changes in the disposition of in-lock and out-of-lock vessel accident

8. Due to the dissolution of the Canal Zone District Court, suit is to be filed in the Eastern District of Louisiana. 22 U.S.C. § 3776.

9. The original version of H.R. 111 (which became the 1979 Act), to which House Report 98 is referring, had a claim limitation of $120,000; the limit was later dropped to $50,000 in a compromise with the Senate.

claims from the scheme that had existed under the Canal Zone Code. The original Senate version would have repealed C.Z. Code tit. 2, § 271 (Supp.1976), which had authorized the Panama Canal Company to settle personal injury and death claims such as McClain's, *see* S.Rep. No. 255, 96th Cong., 1st Sess. 20 (1979), but left intact the Canal Zone Code's authorization to the Panama Canal Company (now Commission) to sue and be sued, C.Z. Code tit. 2, § 65 (1963 & Supp.1976). Thus nonvessel-related personal injury and death claims could have been brought directly in court against the Commission. A conference committee was convened. On this issue the Senate acquiesced to the House; the explanatory language of the Conference Committee Report is illuminating:

> "[T]he House bill withdrew consent to suit against the United States or the Commission on claims other than claims for damage to vessels in the locks and placed a limitation of $120,000 on the amount of each claim that could be administratively settled by the Commission. The Senate amendment deleted this chapter and continued in effect the present claims provisions....

> "The Senate recedes, with an amendment ... *reducing to 50,000 the amount of claims* other than vessel accident claims *within the authority of the Commission to effect administrative settlement.*" H. Conf. Rep. No. 473, 96th Cong., 1st Sess. 61 (1979), 1979 U.S.Code

Cong. & Admin.News p. 1144 (emphasis added).

This conference report thus supports the view that section 3761(b) not only limits the Commission's power to pay more than $50,-000, but is also a limitation on power to adjudicate claims of greater size.[10]

We point out that our construction of the statute is consistent with that of the Comptroller General, who, under the 1979 Act, 22 U.S.C. § 3723(b), must report to Congress any illegal "undertaking" by the Commission. In two opinion letters, both written before this case arose, the Comptroller General stated that the $50,000 limit in section 3761(b) marks the outer bound of the Commission's jurisdiction as well as its settlement power. *See* Letter from Comptroller General of the United States to Panama Canal Commission 7 (April 22, 1980) ("[T]he Commission may not entertain a section 1401 [codifed at 22 U.S.C. § 3761] claim for more than $50,000, even if it could settle the claim for less than $50,-000."); Letter from Comptroller General of the United States to Panama Canal Commission 2 (Feb. 4, 1981) ("[C]laims[ ] for personal injury, property damage, or death arising from canal operation generally, can be settled by the Commission only if they are for $50,000 or less.").

Congress' reasons for limiting the Commission's jurisdiction to claims of a certain size are not altogether obvious. Nonetheless, we are not free to rewrite the statute, especially when the legislative his-

---

**10.** In 1985, Congress again amended the 1979 Act. After these amendments, out-of-lock vessel-related claims are again treated the same as in-lock claims, but no change was made in the treatment of nonvessel-related personal injury and death claims, Panama Canal Amendments Act of 1985, Pub.L. No. 209, 99 Stat. 1716 (1985). The Commission may settle claims of any size arising from in-lock or out-of-lock vessel accidents, and a dissatisfied claimant may sue. 22 U.S.C. §§ 3771(a), 3772, 3776. The 1985 Amendments returned the vessel-related claims scheme to that which had existed from 1951 to 1979. There is one slight difference. As to in-lock damages, if the vessel was not controlled by a Commission pilot, "the Commission may adjust and pay the claim *only* if the *amount of the claim does not exceed $50,000,* unless the injuries were caused by another vessel under the control of a Panama Canal pilot." 22 U.S.C.

§ 3771(b)(1) (emphasis added). The House Report describing this limitation refers to it sometimes as a limitation of liability and other times in terms suggesting that the claim itself may not exceed $50,000 else the Commission loses jurisdiction. H.R.Rep. No. 84, 99th Cong., 1st Sess. (1985) (the Senate report incorporates the explanation of the House Report, *see* S.Rep. No. 206, 99th Cong., 1st Sess.1985)). To the extent the House Report is less emphatic in describing the $50,000 limitation of section 3771(b)(1) in jurisdictional terms than the various reports discussing the $50,000 limitation on section 3761(b) claims, it is the only contrary piece of legislative history that we have found, and, as noted, it construes a different provision and dates from a time many years after the enactment of section 3761(b) in its present form by a different Congress.

tory—far from dispelling the notion that the $50,000 limitation on claims is jurisdictional—bolsters that interpretation. Moreover, the statute as we construe it creates no harshness. Properly advised claimants will not ask for more than $50,000, and claimants who erroneously seek too much may recast their claim within the Commission's jurisdiction.

If section 3761(b) was the only statute in American jurisprudence that deprived a court or administrative body of jurisdiction over claims in excess of a certain amount, we might wonder whether Congress could have intended such an aberrant approach. However, the Panama Canal Act is not *sui generis* in this aspect of its jurisdictional scheme. For example, under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, the United States district courts have no jurisdiction of certain types of claims against the United States if those claims *exceed* $10,000. Claims of greater amount are within the exclusive jurisdiction of the Court of Claims. *See Ware v. United States*, 626 F.2d 1278, 1287 (5th Cir.1980); C. Wright, A. Miller, E. Cooper, *Federal Practice & Procedure* §§ 3657, 3701 (1985). Similarly, certain state courts—for example, justice of the peace courts or county courts—are deprived of jurisdiction if the amount claimed exceeds a specified sum. *E.g.*, 16 Tex.Jur.3d *Courts* §§ 85 to 110 (1981) (describing this hierarchy of jurisdiction in the Texas courts); Miss.Code Ann. § 9–9–21 (Supp.1986) (county court jurisdiction limited to claims not in excess of $25,000); § 9–11–9 (justice of the peace has no jurisdiction of claims in excess of $1,000); La. Code Civ.Proc. art. 4842 (West Supp.1987) (parish court has no jurisdiction of claim in excess of $10,000); art. 4911 (justice of the peace has no jurisdiction of claim in excess of $1,200); 20 Am.Jur.2d *Courts* § 154 (1965) (citing state decisions for proposition that "[s]ometimes the [jurisdictional] limitation is to the effect that the court has no jurisdiction of matters where the amount

involved exceeds a specified maximum"). These examples (and doubtless there are others) demonstrate that Congress took a familiar course in limiting the Commission's jurisdiction to claims not in excess of a certain sum.

It may be objected that in the state court and Tucker Act examples just given a claimant who asks for too much can take his claim to another court, while a section 3761(b) claimant whose claim exceeds $50,000 has no other source for relief. However, a claimant whose claim the Commission rejects on such jurisdictional grounds can seek damages from Congress via a private relief bill, a practice that prevailed prior to passage of the FTCA. *See* Hulen, *Suits on Tort Claims Against the United States*, 7 F.R.D. 689, 691 (1948).[11] A better answer is to repeat what we said earlier: a properly advised claimant will not seek more than the jurisdictional amount, and a tardily informed claimant may amend his claim or file a new claim within the $50,000 limit. Finally, it is well to remember that the United States has the right to define the conditions under which its liability arises. *See United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979); *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Any perceived harshness in a system that partially waives the government's immunity should be considered in light of the permissible alternative: complete sovereign immunity.

### Conclusion

The district court did not err in refusing to order the Commission to adjudicate McClain's claim because the claim exceeded the Commission's subject matter jurisdiction.

AFFIRMED.

---

11. There may also be room to argue that the 1979 Act should be construed to require the Commission to submit a formal report and recommendation to Congress when a nonvessel-related personal injury claim exceeds $50,000 since that was the procedure for out-of-lock vessel claims over $120,000 (until 1985, *see* note

9, *supra* ) and Congress referred to treatment of such out-of-lock vessel claims as an explanation for the $50,000 limitation in section 3761(b). No relief of this kind was requested of the Commission, nor was this matter raised in the court below or in this Court.