# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**
March 15, 2011

No. 10-10290

**Lyle W. Cayce**
**Clerk**

RANDALL D WOLCOTT, MD, P.A.,

Plaintiff–Appellant

v.

KATHLEEN SEBELIUS, in her official capacity as Secretary of Health and Human Services of the United States; TRAILBLAZER HEALTH ENTERPRISES LLC,

Defendants–Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, GARZA, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This appeal arises from the district court's dismissal under Rule 12(b) of five claims for mandamus relief brought by Plaintiff–Appellant Randall D. Wolcott, M.D., P.A. ("Wolcott"), a provider of wound-care services. Wolcott is suing Defendant–Appellee Kathleen Sebelius ("Secretary"), in her official capacity as Secretary of Health and Human Services, the agency that administers the Medicare Program, and TrailBlazer Health Enterprises, LLC ("TrailBlazer"), a for-profit limited liability company that has been contracted to administer payment of Medicare benefits in Texas.

Wolcott organized his five mandamus claims by count. Additionally, Wolcott brought a claim for violations of procedural and substantive due process under the Fifth Amendment and a claim for violations of the Administrative Procedures Act. The defendants moved for dismissal of the entire action arguing that there was no subject matter jurisdiction because Wolcott failed to meet the requirements for judicial review under 42 U.S.C. § 405(g) and (h), and that Wolcott had failed to plead claims upon which mandamus relief may be granted. The district court granted the defendants' motion and dismissed the entire action. Wolcott appeals only the dismissal of the five mandamus actions. We AFFIRM the dismissal of Counts II, III, IV, and V, and REVERSE and REMAND the dismissal of Count I.

## I. BACKGROUND

### A.   The Parties

Wolcott is a professional association organized under the laws of Texas with its principal offices located in Lubbock, Texas. Wolcott is a provider of wound-care services, including debridement, which is the removal of dead, damaged, or infected tissue to expose healthy tissue. Since 1994, Wolcott is a participating supplier of professional medical services under Part B of the federal Medicare program. Kathleen Sebelius is named in her official capacity as Secretary of the United States Department of Health and Human Services, the agency that administers the Medicare Program. TrailBlazer is a for-profit limited liability company organized in Texas and an affiliate of BlueCross BlueShield of South Carolina. TrailBlazer is a Medicare Contractor or "carrier" that has contracted to administer the payment of Medicare benefits in Texas.

### B.   The Administrative Appeals Process for Medicare Claims

This case involves Wolcott's reimbursement claims under Medicare Part B. 42 U.S.C. §§ 1395j–1395w. Part B is a federally subsidized, voluntary health insurance program that provides supplemental insurance coverage for certain

items, including outpatient physician services rendered in clinic settings. *See id.*

The Secretary delegates the administration of the Medicare Act to the Centers for Medicare and Medicaid Services ("CMS"). CMS contracts with private insurance companies to perform carrier functions. *See* 42 C.F.R. § 421.5. These carriers process claims, determine whether services are covered by Medicare, and determine the amount of payment for services furnished, among other duties. 42 C.F.R. § 421.200. TrailBlazer is acting as the Medicare carrier for Wolcott.

Medicare has a highly structured appeals process for claims:

> The Medicare contractor makes an initial determination when a claim for Medicare benefits under Part A or Part B is submitted. A beneficiary who is dissatisfied with the initial determination may request that the contractor perform a redetermination of the claim if the requirements for obtaining a redetermination are met. Following the contractor's redetermination, the beneficiary may request, and the Qualified Independent Contractor (QIC) will perform, a reconsideration of the claim if the requirements for obtaining a reconsideration are met. Following the reconsideration, the beneficiary may request, and the ALJ will conduct a hearing if the amount remaining in controversy and other requirements for an ALJ hearing are met. If the beneficiary is dissatisfied with the decision of the ALJ, he or she may request the [Medicare Appeals Council ("MAC")] to review the case. If the MAC reviews the case and issues a decision, and the beneficiary is dissatisfied with the decision, the beneficiary may file suit in Federal district court if the amount remaining in controversy and the other requirements for judicial review are met.

42 C.F.R. § 405.904(a)(2).

## C.    **Factual and Procedural Background**

Because this appeal concerns motions to dismiss under Federal Rule of Civil Procedure 12(b), the facts presented below are as alleged by Wolcott.

Wolcott received assignments from his Medicare patient–beneficiaries. As the assignee, Wolcott stepped into the shoes of each patient–beneficiary and thus assumed each patient's right to payment and of appeal. Wolcott alleges that between March 2008 and June 2009, TrailBlazer denied virtually 100% of Wolcott's debridement claims, with a total value of over $700,000. Wolcott appealed these denials through the Medicare administrative appeals process. For the administrative appeals in which final decisions had been rendered by the time of the complaint, 100% of the defendants' denials were reversed. Ninety-two percent of the reversals came from decisions by administrative law judges ("ALJ")—the third level of the Medicare administrative appellate process. The decisions favorable to Wolcott found that Wolcott "is entitled to Medicare payment for services rendered" and "**DIRECTED** [TrailBlazer] to process the claim[s] in accordance with [the] decision." (emphasis in original). Despite Wolcott's success in obtaining administrative appellate decisions reversing the denial of claims, the defendants allegedly affirmatively re-denied a subset of these claims for lack of medical necessity—the same basis on which TrailBlazer initially denied the claims.

Further, the defendants allegedly routinely failed to pay Wolcott within the legally prescribed time periods after Wolcott successfully appealed the denied claims. For example, Wolcott alleges in its complaint that after a September 5, 2008 ALJ decision approving $21,000 in payments, TrailBlazer failed to issue $11,500 of those claims until April, 2009—more than six months after the usual 40-day period by which payment should be paid after an administrative reversal of a claim denial.

Wolcott also alleges that the defendants acted unlawfully in processing new claims submitted subsequent to the appeals. Despite ALJ determinations that the defendants' stated rationales for denying past claims were legally invalid, Wolcott alleges that the defendants continue to use those same

4

rationales to deny new claims. Specifically, the defendants have denied claims because allegedly: the number of debridements exceed five debridements per patient per year; Wolcott's services are "investigational or do not meet the medical standard of care for wound care"; Wolcott does not conduct contemporaneous Skin Oxygenation and Perfusion Assessments; Wolcott uses of standardized, template, or rote language in its documentation; and Wolcott fails to actively manage comorbidities.[1]

Wolcott further contends that TrailBlazer automatically denies debridement claims in excess of five debridements per patient per year. Wolcott asserts the automatic denial of debridement claims in excess of five debridements per patient per year is contrary to law and TrailBlazer's own Local Coverage Determination ("LCD").

Wolcott also asserts that the defendants have failed to remove Wolcott from non-random prepayment complex medical review ("prepayment review"), despite the fact that a carrier is typically prohibited from keeping a supplier on prepayment review for more than one year. Wolcott was on prepayment review beginning March 17, 2008. Despite having received a letter from the defendants informing it that they had removed Wolcott from prepayment review on March 21, 2009, Wolcott alleges it was still on prepayment review as of June 22, 2009 and that the defendants have denied more than 1,500 of Wolcott's claims, totaling in excess of $150,000, while it was on prepayment review.

In his complaint, Wolcott brought five claims for mandamus relief, a claim for violations of procedural and substantive due process under the Fifth Amendment, and a claim for violations of the Administrative Procedure Act. Wolcott organizes his five mandamus claims by counts. In Count I, Wolcott asks for mandamus compelling the defendants to process and pay successfully

---

[1] A comorbidity is the presence of a disorder or medical condition in addition to the primary disease or disorder, or the effect of such additional disorders or diseases.

appealed claims in accordance with final administrative decisions. In Count II, Wolcott asks for an order in mandamus compelling the defendants to timely pay Wolcott for claims after it succeeds on appeal and to implement effective processes to effectuate timely payment as required by law. In Count III, Wolcott asks the Court to order the defendants to cease denying Wolcott's new claims for reasons that have previously been held invalid in final administrative decisions and to reverse all denials predicated on such invalid reasons. In Count IV, Wolcott asks for an order in mandamus compelling the defendants to reverse prepayment-review denials made after March 21, 2009, and to remove Wolcott from prepayment review. Finally, in Count V, Wolcott asks the court to order the defendants to cease automatically denying debridement claims in excess of five per patient per year.

The district court granted the defendants' motion in a fourteen-page order *nunc pro tunc* and dismissed all of Wolcott's claims. Wolcott timely appealed the dismissal of the five claims for mandamus relief. Wolcott does not appeal the dismissal of the latter two claims; it appeals only the five mandamus claims. The Court has jurisdiction to review this decision pursuant to 28 U.S.C. § 1291.

## II.  STANDARDS OF REVIEW

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

We review a district court's dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction de novo. *Taylor v. Acxiom Corp.*, 612 F.3d 325, 331 (5th Cir. 2010). The district court must dismiss the action if it finds that it lacks subject matter jurisdiction. FED. R. CIV. P. 12(h)(3). The party asserting

6

jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming*, 281 F.3d at 161.

A trial court may find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). In cases where 28 U.S.C. § 1361 jurisdiction was at issue, this Court has noted that courts should be mindful to "avoid tackling the merits under the ruse of assessing jurisdiction." *See Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980); *see also McClain v. Pan. Canal Comm'n*, 834 F.2d 452, 454 (5th Cir. 1987) ("The court should not look to the merits in deciding the jurisdictional question."). Instead, "the court must accept as true all nonfrivolous allegations of the complaint." *McClain*, 834 F.2d at 454.

## B.   Motion to Dismiss for Failure to State a Claim

We "review[] a district court's dismissal under a Rule 12(b)(6) motion *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citation and quotation marks omitted). However, we are "not bound to accept as true a legal conclusion couched as factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2008)). We examine the factual allegations to ensure that they are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may

7

take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

We have recognized that "'reversal is inappropriate if the ruling of the district court can be affirmed on any grounds, regardless of whether those grounds were used by the district court.'" *Cardoso v. Reno*, 216 F.3d 512, 515 (5th Cir. 2000) (quoting *Bickford v. Int'l Speedway Corp.*, 654 F.2d 1028, 1031 (5th Cir. 1981)).

### III.  DISCUSSION

Wolcott asserts that the district court erred in dismissing the five mandamus claims because there is subject matter jurisdiction for each of the claims and because each count properly states a claim for relief.  Given that reversal is inappropriate if the ruling can be affirmed on any ground, we analyze each count to determine whether it can be properly dismissed under either Rule 12(b)(1) or Rule 12(b)(6), addressing subject matter jurisdiction first.

### A.    Subject Matter Jurisdiction

We consider the defendants' argument that 42 U.S.C. § 405(h) precludes mandamus jurisdiction under 28 U.S.C § 1361 before addressing whether mandamus jurisdiction exists over each claim.

### 1.    42 U.S.C. § 405(h) and Mandamus Jurisdiction

Section 405(h) of Title 42 concerns the finality of the Secretary's decisions under the Medicare Act and when federal courts are prohibited from exercising judicial review of those decisions.  The defendants argue that 42 U.S.C. § 405(h) precludes jurisdiction over this action by rendering the provisions of 42 U.S.C. § 405(g) the sole avenue for judicial review of claims arising under the Medicare Act.  The defendants contend that Wolcott failed to meet the jurisdictional requirements of § 405(g) by failing to exhaust administrative remedies and receive a final decision from the Secretary before bringing these claims in the federal courts.  The district court did not explicitly decide the issue of whether

mandamus jurisdiction under 28 U.S.C. § 1361 is precluded by § 405(h). However, if the defendants' argument is correct, the entire suit would have to be dismissed for lack of subject matter jurisdiction. We join the near unanimity of all other circuits holding § 405(h) does not preclude mandamus jurisdiction to review otherwise unreviewable procedural issues.

> Section 405(h) states:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). Section 405(h) is part of the Social Security Act; however, it is made applicable to the Medicare Act by 42 U.S.C. § 1395ii, with any reference to "Commissioner of Social Security or the Social Security Administration considered as a reference to the Secretary or the Department of Health and Human Services, respectively." 42 U.S.C. § 1395ii.

The defendants would have this Court focus on the second sentence of § 405(h), and require Wolcott to satisfy the requirements of § 405(g), which are:

> (1) a final decision of the Secretary made after a hearing; (2) commencement of a civil action within 60 days after the mailing of notice of such decision (or within such further time as the Secretary may allow); and (3) filing of the action in an appropriate district court, in general that of the plaintiff's residence or principal place of business.

*Weinberger v. Salfi*, 422 U.S. 749, 763–64 (1975); *see* 42 U.S.C. § 405(g). The defendants cite to several Supreme Court cases and one Fifth Circuit case to support their argument that § 405(g) is the sole avenue of judicial review for claims arising under the Medicare Act: *Shalala v. Illinois Council on Long Term*

*Care, Inc.*, 529 U.S. 1, 20 (2000); *Heckler v. Ringer*, 466 U.S. 602, 605 (1984); *Salfi*, 422 U.S. at 760–61; and *Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999).

None of the cases cited by the defendants are controlling in this case. *Illinois Council on Long Term Care*, *Salfi*, and *Affiliated Professional Home* do not concern § 1361 jurisdiction. *Ringer* explicitly left open the question of whether § 1361 jurisdiction was available. *See Ringer*, 466 U.S. at 616. Furthermore, as other circuits have pointed out, the second sentence of § 405(h) is only controlling where a judicial decision favorable to the plaintiff would affect the merits of whether the plaintiff is entitled to the benefits, not when the suit is brought to review otherwise unreviewable procedural issues. *Belles v. Schweiker*, 720 F.2d 509, 512 (8th Cir. 1983); *Dockstader v. Miller*, 719 F.2d 327, 329 (10th Cir. 1983); *Dietsch v. Schweiker*, 700 F.2d 865, 868 (2d Cir. 1983). Here, the plaintiff does not seek a redetermination of administrative decisions concerning its right to benefits, but rather the enforcement of these administrative decisions and a review of what Wolcott characterizes as otherwise unreviewable procedural issues. Thus, the second sentence of § 405(h) is not the issue.

The actual threshold issue here is whether the third sentence of § 405(h) precludes mandamus jurisdiction to review otherwise unreviewable procedural issues. The third sentence reads: "No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h). To date, the Supreme Court and the Fifth Circuit have declined to reach this issue, holding instead that even if § 1361 jurisdiction were not precluded, mandamus was not an appropriate remedy because the claim was insubstantial or because an adequate alternative remedy existed. *See, e.g.*, *Your Home Visiting Nurse Servs., Inc. v. Shalala,* 525

U.S. 449, 456–57 n.3 (1999); *Ringer*, 466 U.S. at 616–17 (holding that mandamus was not appropriate because there was an adequate alternative remedy); *Smith v. N. La. Med. Review Ass'n*, 735 F.2d 168, 172 (5th Cir. 1984).[2]

There is nearly unanimous consensus among the other circuits that 28 U.S.C. § 1361 "provides jurisdiction in cases challenging the procedures used in administering . . . benefits but unrelated to the merits" of the benefits claim. *Burnett v. Bowen*, 830 F.2d 731, 737–38 (7th Cir. 1987); *see Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001);  *Cordoba v. Massanari*, 256 F.3d 1044, 1047 (10th Cir. 2001); *Buchanan v. Apfel*, 249 F.3d 485, 491–92 (6th Cir. 2001); *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 508–09 (4th Cir. 1999); *Briggs v. Sullivan*, 886 F.2d 1132, 1142 (9th Cir. 1989); *City of New York v. Heckler*, 742 F.2d 729, 739 (2d Cir. 1984); *Belles*, 720 F.2d at 512; *see also Colonial Penn Ins. Co. v. Heckler*, 721 F.2d 431, 437 n.2 (3rd Cir. 1983) (noting that it has previously exercised mandamus jurisdiction  in Social Security cases).  The First and Eleventh Circuits have not decided this issue, but have left open the possibility of mandamus jurisdiction.  *See Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 n.3 (11th Cir. 2004) (assuming, without deciding, that mandamus jurisdiction is not barred by § 405(h)); *Matos v. Sec'y of Health, Educ. & Welfare*, 581 F.2d 282, 186 n.6 (1st Cir. 1978) (leaving open the possibility that mandamus jurisdiction is available where no other remedy is available).

---

[2] In *Green v. Heckler*, 742 F.2d 237 (5th Cir. 1984), a case concerning the merits of whether the plaintiffs were entitled to emergency advance payments of benefits, we stated that exercising mandamus jurisdiction in that case would frustrate the purpose of § 405(g) and (h) to provide the sole method of review of Social Security Claims.  *Green* is factually distinguishable from this case as it involved an action where the merits of the benefits determination were at issue, unlike here where the claims determinations are not at issue so much as the process of enforcing final determinations of benefit claims and other procedural issues.

The rationale undergirding several of the circuit courts' holdings that § 405(h) does not preclude mandamus jurisdiction is that Congress could have withdrawn mandamus jurisdiction, but chose not to do so.  The third sentence of § 405(h) specifically strips the federal courts of jurisdiction under 28 U.S.C. §§ 1331 and 1346 for any claims arising under the Medicare Act, but does not mention § 1361.  *See* 42 U.S.C. § 405(h).  The D.C. Circuit reasoned "that Congress knows how to withdraw a particular remedy and [the fact that it] has not expressly done so is some indication of congressional intent to preserve that remedy." *Ganem v. Heckler*, 746 F.2d 844, 851–52 (D.C. Cir. 1984) (noting that Congress explicitly stripped the federal courts of mandamus jurisdiction to review Veterans Affairs decisions regarding benefit claims when it amended 38 U.S.C. § 211(a) in response to federal courts narrowly construing the prior language of § 211 and exercising judicial review).  Thus, these courts reason that "Congress's failure to express disapproval of the use of mandamus jurisdiction in [Medicare] cases when it amended other jurisdictional provisions is evidence that Congress intended to preserve mandamus jurisdiction for claims that are procedural in nature under the [Medicare] Act." *Burnett*, 830 F.2d at 738.

We find these circuits' reasoning is persuasive.  We hold that § 405(h) does not preclude § 1361 jurisdiction to review otherwise unreviewable procedural issues and join the unbroken consensus among the overwhelming majority of other circuit courts.

### 2.    Jurisdiction Under 28 U.S.C. § 1361

We must now determine whether the district court has jurisdiction over each of the claims for mandamus under 28 U.S.C. § 1361.  Under the Mandamus and Venue Act, 28 U.S.C. § 1361, a district court has "jurisdiction [over] any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  Section 1361 did not make any substantive change to the common law

of mandamus, but merely extended mandamus jurisdiction formerly exercised only by the United States District Court for the District of Columbia to other district courts. *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969) (per curiam) (summary calendar). This Court has found mandamus jurisdiction exists if the action is an attempt to compel an officer or employee of the United States or its agencies to perform an allegedly nondiscretionary duty owed to the plaintiff. *See Ingalls Shipbuilding, Inc. v. Asbestos Health Claimants*, 17 F.3d 130, 132 (5th Cir. 1994); *McClain*, 834 F.2d at 454.

The plain language of § 1361 is clear that it only grants jurisdiction to consider a mandamus action; it does not grant jurisdiction to consider actions asking for other types of relief—such as injunctive relief. *See* 28 U.S.C. § 1361. An injunction "is a remedy to restrain the doing of injurious acts" or to require "the undoing of injurious acts and the restoration of the status quo," whereas "mandamus commands the performance of a particular duty that rests on the defendant or respondent, by operation or law or because of official status." 42 AM. JUR. 2D *Injunctions* § 7 (citations omitted).

Taking Wolcott's allegations at face value, there is subject matter jurisdiction for Counts I, II, and IV because the ultimate relief Wolcott seeks in each count is an order compelling the defendants to perform a nondiscretionary duty. Count I asks the district court to compel the defendants to process and pay claims in accordance with binding final administrative decisions ordering payment of these claims. Count II seeks an order to compel defendants to adhere to payment deadlines mandated in the Medicare Claims Processing Manual. Count IV seeks an order compelling the defendants to remove Wolcott from prepayment review as required by 42 C.F.R. § 421.505(a)(1). These three counts ask the district court to order the defendants to complete affirmative actions to fulfill their allegedly nondiscretionary duties under the law.

13

There is no subject matter jurisdiction under § 1361 for Counts III and V for a reason not articulated by the parties or the district court: the relief Wolcott seeks is not mandamus but rather declaratory judgment and injunctive relief. In Counts III and V, Wolcott asks the court to cease doing an injurious action in the future. In Count III, the Wolcott asks the court to order defendants to cease denying its new claims for reasons that have been held invalid in previous administrative decisions. In Count V, Wolcott asks the court to order the defendants to cease automatically denying debridement claims in excess of five per patient per year. Both of these requests for relief would require the court to prohibit the defendants from acting in a certain manner in the future rather than compel the defendants to affirmatively perform a presently existing duty under the law. Section 1361 does not confer subject matter jurisdiction to the federal courts to consider such an action or grant such relief.

Given that the relief sought in Counts III and V is declaratory and injunctive in nature and there is no jurisdiction under §1361, Wolcott must prove there is another basis for subject matter jurisdiction for these counts. *See Jones*, 609 F.2d at 781 ("Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present."); *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir. 1985) ("The district court has no power to grant an interlocutory or final injunction against a party over whom it has not acquired valid jurisdiction . . . ." (citation and quotation marks omitted)). However, Wolcott only raises the issue of jurisdiction under § 1361 in this appeal; it does not appeal the district court's determination that there is no jurisdiction under 42 U.S.C. § 405(g) or 28 U.S.C. § 1331. Thus, there is no independent basis for subject matter jurisdiction for Counts III and V.

14

Accordingly, we AFFIRM the district court's decision dismissing Counts III[3] and V.[4]  We proceed to determine whether we should affirm the district court's decision to dismiss Counts I, II, and IV.

## B.   Stating a Claim for Mandamus

When mandamus jurisdiction exists, the court must determine whether Wolcott has stated a claim for mandamus relief.  Mandamus may only issue when (1) the plaintiff has a clear right to relief, (2) the defendant a clear duty to act, and (3) no other adequate remedy exists.  *Jones*, 609 F.2d at 781; *Green*, 742 F.2d at 241 (citations omitted).

We have further clarified what constitutes a duty and an adequate remedy under the mandamus standard.  Mandamus is only appropriate when the duty is "so plainly prescribed as to be free from doubt"; thus, mandamus is not available to review discretionary acts of agency officials.  *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992) (citations and internal quotation marks

---

[3] Wolcott quotes extensively from and cites to *DeWall Enterprise, Inc. v. Thompson* to support its claim for mandamus relief in Count III.  206 F. Supp. 2d 992 (D. Neb. 2002).  The plaintiff's reliance on that case is unavailing because it involved a true mandamus action rather than an action for injunctive relief. The plaintiff in *DeWall* sought an order in mandamus compelling the defendant–carrier to consistently process the plaintiff's claim for a certain piece of medical equipment under the Code L0430 as directed by a prior, allegedly binding ALJ order involving the same claimant, the same device, and the same regulation. *Id.* at 1000, 1002.  Thus, the relief requested was an order compelling the performance of an affirmative action to fulfill an allegedly binding nondiscretionary duty. Here, Wolcott asks the court to order that defendants cease denying any new claims brought by Wolcott for reasons previously held invalid in administrative decisions.  Unlike in *DeWall*, future claims may involve different patients and different medical circumstances.

[4] Claim V would fail under Rule 12(b)(6) as well.  A carrier may automatically deny claims when a "clear policy serves as basis for denial" for that type of claim. *Medicare Program Integrity Manual*, Pub. No. 100-08, Ch. 3, § 3.5.1. The Manual clarifies that the term "clear policy" means "statute, regulation . . . or LCD [Local Carrier Determination]." *Id.* TrailBlazer's LCD states that "services beyond the fifth . . . surgical debridement per patient per year will be payable only upon medical review of records that demonstrate the medical reasonableness and necessity (appeal)."  Given this policy in the LCD, TrailBlazer may automatically deny debridement claims in excess of five per patient per year, and Wolcott may appeal that decision and demonstrate medical reasonableness and necessity in the course of that appeal to receive payment.

omitted); *see Green*, 742 F.2d at 241. In short, mandamus does not create or expand duties, but merely enforces clear, non-discretionary duties already in existence.

The third element requires that there be no other adequate remedy available. *Jones*, 609 F.2d at 781. This requires the exhaustion of any adequate administrative remedies before a court may issue mandamus. *Ringer*, 466 U.S. at 616–17 (finding an adequate remedy under § 405(g) to challenge all aspects of the Secretary's denial). The Supreme Court has stated that "[o]rdinarily mandamus may not be resorted to as a mode of review where a statutory method of appeal has been prescribed." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 27–28 (1943). An alternative remedy, including an administrative remedy, is adequate if it is "capable of affording full relief as to the very subject matter in question." *See Carter*, 411 F.2d at 773.

Even when a court finds that all three elements are satisfied, the decision to grant or deny the writ remains within the court's discretion because of the extraordinary nature of the remedy. *See United States v. Denson*, 603 F.2d 1143, 1146 (5th Cir. 1979).

### 1. Count I: The Defendants' Alleged Failure to Abide by Final ALJ Decisions Affording Benefit Payments to Wolcott

In the complaint, Wolcott asks for mandamus to compel the defendants to process and pay claims that have been successfully appealed in accordance with final administrative decisions. Wolcott asserts the defendants have a "non-discretionary duty to issue payment to Wolcott for appealed claims finally decided in Wolcott's favor" by the ALJ. Additionally, Wolcott pleads that there is no administrative appeals process to challenge the defendants' failure to pay administratively reversed denials.

To support this mandamus claim and plead sufficient facts to raise the right to relief beyond that of speculation, Wolcott attaches a fully favorable

decision by an administrative law judge ("ALJ"), dated June 23, 2009, which reversed the denial of ninety-five debridement claims for services rendered in April and May 2008 and concluded that "the provider is entitled to Medicare payment for services rendered in every case." Wolcott also attaches a remittance notice received on August 26, 2009, that corresponds to a list of patient names and services that were the basis of the claims at issue in the June 23 decision. A handwritten note on the remittance form states that only one debridement treatment was paid per patient and that payment for the remaining debridement treatments per patient were denied for lack of medical necessity.

The defendants first argue that Wolcott has failed to plead a set of facts for this claim that raises a right to relief above the speculative level because Wolcott has failed to include all the remittance notices related to the June 23, 2009 decision. The defendants further argue that Wolcott has failed to plead a claim in mandamus. Though the defendants agree that they have a nondiscretionary duty to *pay* a successfully appealed claim, they argue they met that duty and merely exercised their discretion in determining *the amount of payment due* by issuing one payment to each patient/service-date combination listed in the appended list. Finally, they argue that Wolcott had two alternative administrative remedies. They argue that Wolcott could have appealed the amount of payment because an amount of payment determined by a contractor in effectuating the ALJ's decision is a new initial determination under § 405.924. *See* 42 C.F.R. § 405.1046(c). Alternatively, they argue that Wolcott could have requested a "reopening," which is a remedial action taken to change a binding determination or decision that resulted in underpayment. *See* 42 C.F.R. § 405.980(a). We find that Wolcott has sufficiently alleged that the defendant has a nondiscretionary duty to issue payment for a successfully appealed claim and that there is no adequate alternative remedy.

17

The defendants concede that TrailBlazer has a non-discretionary duty to pay a successfully appealed claim, but argue that they fulfilled this duty and that TrailBlazer merely exercised its discretion on what amount to pay. *See* 42 C.F.R. §§ 405.1048, 405.1130 (describing when an administrative appeals decision becomes binding on the parties). The defendants seek to recast Wolcott's allegation as a claim contesting the *amount* Wolcott was paid. The defendants' argument is unpersuasive. Wolcott's complaint does not allege that it was not paid enough for each successively appealed claim; rather, it alleges that the defendants wrongfully redetermined that a subset of the successively appealed claims were not covered by Medicare because the treatments were not medically necessary, and that these redeterminations denying coverage were in direct contravention to a binding June 23 ALJ decision that already dealt with this issue. In the complaint, Wolcott states: "Although Defendants have a clear nondiscretionary duty to issue payment to Wolcott for appealed claims finally decided in Wolcott's favor, they have re-denied and wrongfully failed to pay many such claims." In fleshing out this allegation, Wolcott states that when it received remittance notices that purported to resolve payments for the claims at issue in the June 23 ALJ decision, it found that TrailBlazer had redenied a subset of the claims for lack of medical necessity—the same basis for the defendants' initial denial of these claims that the ALJ rejected in his June 23 decision.

To support this allegation, Wolcott attaches (1) the fully favorable June 23 ALJ decision, and (2) a remittance notice received on August 26, 2009, that corresponds to a list of patient names and services that were the basis of the claims at issue in the June 23 decision. In the June 23 decision, the ALJ notes that in the administrative proceeding, the defendants argued that the services rendered by Wolcott were investigational in nature and thus inappropriate for Medicare payment, and that Wolcott argued that the treatments were medically

reasonable and necessary. The ALJ stated that only if Wolcott "is unable to stop tissue devitalization [through debridements] does he resort to amputation[, and that the ALJ] fails to see how this can be viewed experimental or investigational in nature." The ALJ then went on to rule that "[t]he treatment provided to the multiple beneficiaries as listed on the attached appendix meet the criteria for coverage under Medicare Part B . . . [and that t]he provider is entitled to Medicare payment for services rendered in every case." Thus, the issue of whether Medicare covers these treatments was already decided by the ALJ in the June 23 administrative decision. The attached remittance form, however, shows that despite the above-quoted language from the ALJ decision, the defendants did not issue payment for some of the successfully appealed claims because TrailBlazer again determined these treatments were not covered by Medicare. On the remittance form, the unpaid treatments were coded "CO-50," meaning that the treatments were not covered by Medicare because the treatments were not medically reasonable or necessary. With the allegations in the complaint, the plaintiff's attachments, and the defendant's concession that TrailBlazer has a non-discretionary duty to pay a successfully appealed claim, Wolcott has sufficiently alleged that it has a clear right to relief and that the defendant had a clear nondiscretionary duty to act.

As to the third element, Wolcott does not have an adequate alternative remedy. If Wolcott were merely disputing the amount it was paid for successfully appealed claims, there would be an adequate remedy. When a contractor determines the amount of payment to effectuate an ALJ's decision, this is a new initial determination. 42 C.F.R. § 405.1046(c). Thus, the plaintiff could ask for an administrative review of this new initial determination pursuant to the process described in 42 C.F.R. § 406.904(a)(2). Here, however, Wolcott does not allege that it has been paid too little, but rather alleges that the defendants wrongfully redenied successfully appealed claims for the same reason

19

that the ALJ rejected in the administrative proceeding. Accordingly, there is no new initial determination to appeal.

A reopening of an administrative reconsideration, hearing, or review is not an adequate alternative remedy either. Section 405.980 allows a party to a hearing or review to request that an ALJ or the MAC reopen a hearing or a review for good cause. 42 C.F.R. § 405.980. However, good cause is limited to reasons listed in § 405.986(a):

> (1) There is new and material evidence that--
>     (i) Was not available or known at the time of the determination or decision; and
>     (ii) May result in a different conclusion; or
> (2) The evidence that was considered in making the determination or decision clearly shows on its face that an obvious error was made at the time of the determination or decision.

42 C.F.R. § 405.980. Neither of these reasons is applicable here. Additionally, Wolcott does not want the ALJ or MAC to revise its decision given that the decision was in Wolcott's favor. Wolcott has properly stated a claim in mandamus for the first count.

The defendants' argument that Wolcott must attach all remittance notices to the complaint and identify each specific line item from the ALJ decisions that it is contesting is unavailing. Wolcott has no duty to present evidence upon filing a complaint; it must merely plead a short and plain statement of the grounds for jurisdiction, the claim that entitles it to relief, and a demand for relief sought. FED. R. CIV. P. 8(a).

Wolcott has sufficiently pleaded that it has a clear right to relief, that the defendants owe a non-discretionary duty to issue payment to Wolcott for appealed claims finally decided in Wolcott's favor, and that no adequate alternative remedies exist. Accordingly, we REVERSE the district court's dismissal of Count I.

**2.    Count II: The Defendants' Alleged Failure to Timely Pay Wolcott after Successful Appeal**

In the second count, the plaintiff seeks an order in mandamus compelling the defendants to (1) timely pay Wolcott for claims that it successfully appealed, and (2) establish and implement effective processes to ensure timely payment as required by law.  Wolcott argues that the defendants have a nondiscretionary duty to issue timely payment to Wolcott for successfully appealed claims within deadlines established in the Medicare Claims Processing Manual: (1) the QIC must "mail or fax the effectuation form to the Carrier within ten days of receiving the decision from the ALJ" and (2) the carrier (here, TrailBlazer) must issue payment within one of three specified time periods, the most common time period being thirty days from receipt of the effectuation notice.   If these deadlines are followed, Wolcott alleges that TrailBlazer should issue payment to Wolcott on most claims within forty days unless there is a circumstance requiring a separate computation or clarification; however, Wolcott alleges TrailBlazer has routinely failed to issue payments within this time period, sometimes nearly six months after payment was due.   Wolcott additionally pleads that there is no other adequate remedy available because "[t]here is no administrative appeal process to challenge Defendant's unlawful failure to timely pay Wolcott successfully appealed claims."

The defendants argue that the Wolcott has failed to articulate what kind of remedy the mandamus order will provide especially given that circumstances outside of the Administrative QIC and the carrier's control, such as a delay in the ALJ mailing the decision and variations in transmission time in the mail, could affect transmission time.  The defendants further argue that Wolcott has failed to demonstrate the Secretary's nondiscretionary duty to pay within one standard time frame or a clear right to relief because the agency has established

multiple time frames with multiple exceptions allowing variations in turnaround time and flexibility.

Wolcott has failed to plead a clear right to relief. All parties agree that the Medicare Claims Processing Manual establishes several different time frames by which the carrier must effectuate an ALJ decision ordering payment depending on the contents of the ALJ decision, whether clarification is required, and whether the decision is referred to the Appeals Council.[5] Thus, the actual issue here is whether Wolcott has sufficiently plead the first element of the mandamus standard: whether there was a breach of the duty such that Wolcott

---

[5] The relevant sections of the Medicare Claims Processing Manual are sections 330.4 and 330.5 in chapter 29. Section 330.4 states that the administrative QIC ("AdQIC") will receive all case files and administrative decisions and that the AdQIC must fax or mail an effectuation form containing the necessary information to effectuate the decision to the carrier within ten calendar days from the date the AdQIC receives the case and decision. Section 330.5 sets forth the dates by which a contractor must effectuate the ALJ decision after it receives the effectuation form:

> If the ALJ decision is partially or wholly favorable to the appellant, gives a specific amount to be paid, and there is no agency referral to the Appeals Council, the contractor effectuates within 30 calendar days of the date of the effectuation notice from the AdQIC. . . .

> If the decision is partially or wholly favorable and no agency referral is made, but the amount must be computed by the contractor, it effectuates the decision within 30 days after it computes the amount to be paid to the appellant. The amount must be computed as soon as possible, but no later than 30 calendar days of the date of receipt of the effectuation notice from the AdQIC. . . .

> If clarification from the AdQIC is necessary, the contractor considers the date of the clarification the final determination for purposes of effectuation. If clarification is needed from the provider/physician/supplier (e.g., splitting charges), the contractor requests clarification as soon as possible and computes the amount payable within 30 calendar days after the receipt of the necessary clarification. The contractor considers the date of receipt of the clarification as the date of the final determination for purposes of effectuation.

*Medicare Claims Processing Manual*, Pub. Ch. 29 §§ 330.5. However, where AdQIC refers the decision to the MAC, there are still other deadlines by which the contractor must effectuate the deadlines. Where the AdQIC submitted an agency referral to the Appeals Council, the contractor does not effectuate until it receives notification from the AdQIC. The AdQIC waits for a determination from the Appeals Council. *Medicare Claims Processing Manual*, Pub. Ch. 29, § 330.5.

is clearly entitled to relief in mandamus. Even construing the facts in the light most favorable to the plaintiff, Wolcott has not alleged an actual breach has occurred. Wolcott merely suggests that it is possible that a breach may have occurred. Wolcott pleads that the defendants have routinely failed to issue payment for claims forty days after the ALJ decision—the alleged time frame by which TrailBlazer is required to issue payment in most instances. The complaint thus forces this Court to speculate as to whether TrailBlazer actually failed in their duty to timely pay, or whether there were circumstances present such that TrailBlazer had to pay by one of the many different deadlines set forth in the manual.

Wolcott "is confident that whatever other lawful delays may have occurred, discovery will prove that its allegations that Defendants have failed to meet the two mandatory deadline are true," but confidence in finding facts in the future is not enough to save a claim for which sufficient factual allegations have not already been pled. Mandamus may only issue where there is a clear right to relief; Wolcott has failed to plead a set of factual allegations that satisfies this element by only pleading facts that *suggest* the defendants may have failed in their duty, rather than pleading an actual breach. We AFFIRM the district court's dismissal of Count II.

### 3.   Count IV: The Defendants' Alleged Failure to Remove Wolcott from Prepayment Complex Medical Review

Under the fourth count, Wolcott seeks an order in mandamus compelling the defendants to remove Wolcott from prepayment review status and reverse the prepayment review denials made after March 21, 2009. Wolcott alleges that it was placed on prepayment review three months longer than the one year allowed by law despite TrailBlazer's letter to Wolcott stating the contrary, and that during that time, the defendants unlawfully "sent Wolcott more than 1,500 prepayment letters denying more than 1,500 claims at an average of $100 per

claim, totaling more than $150,000 worth of claims." Wolcott alleges that (1) the defendants had a clear nondiscretionary duty to remove Wolcott from prepayment review after one year; (2) Wolcott has a clear right to be removed from prepayment review denials and to receive a reversal for all claims denied on prepayment review that were made after the allowed year; and (3) there is no adequate remedy available to challenge the defendants' action in keeping Wolcott on prepayment review longer than legally allowed.

The defendants argue Wolcott does not have a right to an order in mandamus compelling reversal of denials after March 21, 2009, because (1) Wolcott was not on prepayment review after March 2009, and TrailBlazer had informed Wolcott as such, and (2) being on "prepayment review" is not itself a basis for denying a claim, but merely an approval and payment process that requires more documentation and manual examination of each claim. The defendants further argue that Wolcott has not demonstrated that the defendants had a nondiscretionary duty to "abstain from denying claims during the alleged three-month period of extended prepayment review" such that Wolcott should have been "automatically paid within 30 days of submission." Finally, they argue that Wolcott should have appealed the denials through the administrative appeals process if Wolcott disagreed with the denials.

Wolcott has failed to state a claim upon which the court could compel reversal of claims denied on prepayment review. Though it has successfully pleaded a claim upon which the court could compel TrailBlazer to remove Wolcott from prepayment review, this portion of Count IV is moot as Wolcott has since been removed from prepayment review.

### a.   Compelling Reversal of Claims Denied on Prepayment Review After March 21, 2009

Wolcott has failed to demonstrate (1) a clear right to an order compelling reversal of claims denied on prepayment review after March 21, 2009, and (2)

that no adequate alternative remedy exists.  Even if TrailBlazer has, in fact, kept Wolcott on prepayment review for longer than lawfully allowed, this does not mean that Wolcott's claims would have automatically been approved and paid had Wolcott been properly removed from prepayment review.  For example, TrailBlazer may have denied the claims because they were not covered under the Medicare Act or because the services were not medically necessary or appropriate.  *See* 42 C.F.R. 405.924.  Wolcott itself points out that TrailBlazer can issue automated denials  when a "clear policy or certain other conditions exist."  Thus, Wolcott has failed to prove TrailBlazers' nondiscretionary duty to automatically approve these claims.  Further, these denials are initial determinations under 42 C.F.R. § 405.924, and Wolcott must appeal these initial determinations through the process described in 42 C.F.R. § 405.924.  Thus, this part of Count IV fails to state a claim upon which relief can be granted.

### b.    Compelling Removal from Prepayment Review

Federal courts may adjudicate only actual, ongoing cases or controversies. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  This means that "throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citation and internal quotation marks omitted).  To sustain this Court's jurisdiction, "it is not enough that a dispute was very much alive when suit was filed, or when review was obtained in the Court of Appeals." *Lewis*, 494 U.S. at 477–78.

Wolcott successfully pleads a claim in mandamus for removal from prepayment review.  However, the plaintiff conceded at oral argument that the defendants have since removed Wolcott from prepayment review.  Thus, this portion of Count IV is moot and lacks subject matter jurisdiction.

We AFFIRM the district court's dismissal of the portion of Count IV asking for an order in mandamus compelling the reversal of claims denied on unlawful

prepayment review after March 21, 2009 because Wolcott failed to demonstrate TrailBlazer had a duty to automatically approve Wolcott's claims and because Wolcott had an alternative remedy in administrative appeal. We AFFIRM the dismissal of the portion of Count IV asking for an order compelling TrailBlazer to remove Wolcott from prepayment review because this portion of the claim is now moot.

## IV.  CONCLUSION

Wolcott is clearly frustrated with what it perceives as TrailBlazer's attempts to give it the bureaucratic runaround by changing the rules to deny or delay payment. However, the federal courts' power to review agency actions under the Medicare Act is limited to extraordinary circumstances where the plaintiff can demonstrate it has a clear right to relief, the defendant a clear duty to act, and that no adequate alternative remedy exists. Accordingly, we AFFIRM the district court's dismissal of Counts II, III, IV, and V; and REVERSE and REMAND the district court's dismissal of Count I.