Miguel A. LANDEROS,
et al., Plaintiffs,

v.

FU KING, INC. D/B/A Stir Fry
88, et al, Defendants.

Civil Action No. 7:13–CV–438.

United States District Court,
S.D. Texas,
McAllen Division.

Signed April 15, 2014.

Michael Kevin Burke, Michael Matthew Guerra, Law Offices of Michael M. Guerra, Manuel Guerra, III, Attorney at Law, McAllen, TX, for Plaintiffs.

Preston Edward Henrichson, Attorney at Law, Edinburg, TX, for Defendants.

## *ORDER DENYING DEFENDANTS' SECOND MOTION TO DISMISS*

RANDY CRANE, District Judge.

### I.  Factual and Procedural Background

Now before the Court is the "Second Rule 12(b)(6) Motion to Dismiss for Failure to State A Claim" (Dkt. No. 14) filed by Defendants Fu King, Inc., d/b/a Stir Fry 88 and Meijuan Liu. Plaintiffs Miguel A. Landeros and Daniel Contreras, on behalf of themselves and all others similarly situated, filed this collective action under the Fair Labor Standards Act ("FLSA") "seeking to recover the unpaid and/or underpaid minimum wages and overtime compensation and other damages owed to themselves and Defendants' other similarly-situated cooks/kitchen workers." (Dkt. No. 13 at ¶ 1).  Plaintiffs' First Amended Original Complaint, the live pleading, alleges that Defendants own and operate a restaurant known as "Stir Fry 88," located in the La Plaza mall food court in McAllen. *Id.* at ¶ 8. Defendants began operation of Stir Fry 88 in mid- to late June 2012 and Plaintiffs worked there as cooks/kitchen workers from the summer of 2012 to the fall of 2013. *Id.* at ¶¶ 10, 11.  Defendants paid Plaintiffs a flat weekly sum for all hours worked, which amount "often (if not always) failed to compensate them at the minimum hourly wage rate" and provide overtime compensation as required by the FLSA. *Id.* at ¶ 1.

In a previous order, the Court denied Defendants' First Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), finding that Defendants' challenge to the existence of FLSA coverage did not implicate the Court's subject matter jurisdiction and could not be considered under Rule 12(b)(1). (Dkt. No. 12).  Rather than dismiss the case under Rule 12(b)(6), the Court granted leave to Plaintiffs to amend their pleading to set forth the alleged factual bases for FLSA coverage. *Id.* Through the present Motion filed pursuant to Rule 12(b)(6), Defendants contend that the First Amended Complaint still fails to state a claim that they are employers cov-

ered under the FLSA. (Dkt. No. 14). Upon consideration of the Motion and Plaintiffs' response (Dkt. No. 15), in light of the relevant law, the Court finds that the Motion must be denied for the following reasons.

## II. Defendants' Motion to Dismiss

### A. Rule 12(b)(6) Standard of Review

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). Rule 12(b)(6) is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.CIV.P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–68, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This standard does not require detailed factual allegations. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). However, a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citations omitted). To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered[1] must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at

570, 127 S.Ct. 1955). A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955), 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. 1937 (quoting FED. R.CIV.P. 8(a)(2)).

### B. FLSA Coverage Requirement

#### 1. Overview

Consistent with Congress's power to regulate interstate commerce, the FLSA mandates minimum wage and overtime compensation for employees who are (1) "engaged in commerce or in the production of goods for commerce" (individual coverage) or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. §§ 206(a), 207(a); *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir.), *cert. denied*, 506 U.S. 915, 113 S.Ct. 323, 121 L.Ed.2d 243 (1992); *Mendoza v. Detail Solutions, LLC*, 911 F.Supp.2d 433, 438 (N.D.Tex.2012). *"Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Martin*, 955 F.2d at 1032 (emphasis in original). The statute defines an "enterprise engaged in com-

---

1. "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir.2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir.2008)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010) (court's review on 12(b)(6) motion "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

merce or in the production of goods for commerce" as an enterprise that:

(A)(i) has employees engaged in commerce or in the production of goods for commerce, *or* that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; *and*

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated). . . .

29 U.S.C. § 203(s)(1) (emphasis added).

Defendants' Motion argues that Plaintiffs have failed to sufficiently plead individual or enterprise coverage, to which Plaintiffs respond that their amended factual allegations are "more than sufficient to make 'enterprise coverage' under the FLSA 'plausible.'" (Dkt. Nos. 14, 15). The Court will therefore confine its analysis to whether Plaintiffs' First Amended Complaint pleads the plausible existence of enterprise coverage.

## 2. Enterprise Coverage

### a. "Engaged in Commerce" and "Handling" Clauses

The first prong of the enterprise coverage definition can be met in one of two ways: (1) through the "engaged in commerce" clause, which tracks the language used to determine individual coverage and can be analyzed in essentially the same manner;[2] or (2) the "handling" clause, which requires separate analysis. *Mendoza*, 911 F.Supp.2d at 439–40. Defendants' Motion addresses the latter by pointing to the statutory definitions of

"commerce" and "goods," and to the definition of "materials" provided by the Eleventh Circuit in *Polycarpe v. E & S Landscaping Serv., Inc.*, 616 F.3d 1217 (11th Cir.2010), and asserting that the definitions as applied to the alleged facts of this case negate enterprise coverage. (Dkt. No. 14).

The Court cannot consider these definitions apart from the history of pertinent amendments to the FLSA, to which Plaintiffs appeal. (Dkt. No. 15). In *Polycarpe*, an opinion on which many courts have relied when interpreting the handling clause, the Eleventh Circuit explained that Congress's amendments to the FLSA since its original enactment in 1938 have enlarged the number of entities subject to coverage. *Polycarpe*, 616 F.3d at 1220 (citing *Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 500–02 (5th Cir.1975)). The 1961 amendments provided for enterprise coverage in addition to individual coverage and added the first version of the handling clause, under which an employer would be considered an "enterprise engaged in commerce" if it had employees "'handling, selling, or otherwise working on goods that have been moved in or produced for commerce. . . .'" *Id.* (quoting 29 U.S.C. § 203(s) (1961)). "[T]his amendment allowed the FLSA potentially to reach retail and service businesses that were otherwise locally focused." *Id.* (citing *Dunlop*, 516 F.2d at 501). In 1974, Congress amended the FLSA to make the handling clause an independent basis for bringing an enterprise within FLSA coverage, and to add the words "or materials" to that clause. *Id.* at 1220–21. Under the amended clause applicable here, an employer falls within enterprise coverage if it has employees

2. "The difference is that in the individual coverage analysis, the question is whether the plaintiff himself engaged in interstate commerce, whereas in the enterprise coverage analysis, the question is whether any two or more of the business's other employees engaged in interstate commerce." *Mendoza*, 911 F.Supp.2d at 440 n. 4.

(not necessarily the plaintiffs) "handling, selling, or otherwise working on *goods or materials* that have been moved in or produced for commerce by any person." *Id.* at 1221; 29 U.S.C. § 203(s)(1)(A)(i) (emphasis added).

■ As noted by Defendants, the FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." (Dkt. No. 14); 29 U.S.C. § 203(b). In other words, the term pertains to interstate commerce. *See Polycarpe*, 616 F.3d at 1221. Consistent with this Circuit's view, *Polycarpe* explained that the reference to goods or materials that "*have been* moved in or *produced* for" interstate commerce reveals Congress's intent " 'to regulate enterprises dealing in articles *acquired intrastate* after travel in interstate commerce.' " *Id.* at 1221 (quoting *Brennan v. Greene's Propane Gas Serv., Inc.*, 479 F.2d 1027, 1030 (5th Cir. 1973)) (emphasis in original). Defendants' Motion also points to the statute's definition of the term "goods" as "goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." (Dkt. No. 14); 29 U.S.C. § 203(i). The "ultimate consumer" exception found in the latter part of this definition excepts an employer from FLSA coverage if it is the ultimate consumer of all of its goods moved in or produced for interstate commerce and is not a "producer, manufacturer, or processor" of those goods. *Polycarpe*, 616 F.3d at 1222. Prior to 1974, the handling clause necessarily required application of this exception be-

cause the clause referred only to goods. *See id.* When Congress added the disjunctive "goods or materials" to the statute through the 1974 amendments, it added a different means to qualify for FLSA coverage that requires no consideration of whether the employer was the ultimate consumer. *Id.* It also declined to define the term "materials," in which case the Eleventh Circuit undertook the task of understanding and applying this term in a way that reflected its ordinary meaning, posed no conflict to Congress's definition of goods, and otherwise comported with the statute, its legislative history, and the guidance of the Department of Labor ("DOL"), the agency in charge of administering the FLSA. *See id.* at 1222–27. Both sides cite to the *Polycarpe* framework for determining whether an item qualifies as a "material," other district courts within this Circuit have adopted that framework, and this Court discerns no reason to do otherwise. (Dkt. Nos. 14, 15); *see Mendoza*, 911 F.Supp.2d at 441–42; *White v. NTC Transp., Inc.*, 2013 WL 5430512, at *4 (N.D.Miss. Sept. 27, 2013). Thus, "for the purposes of the FLSA's handling clause, an item will count as 'materials' if it accords with the definition of 'materials'— tools or other articles necessary for doing or making something—in the context of its use and if the employer has employees 'handling, selling, or otherwise working on' the item for the employer's commercial (not just any) purposes." *Polycarpe*, 616 F.3d at 1227.

■ Turning now to Plaintiffs' First Amended Complaint, the Court notes the pertinent allegations that Plaintiffs' duties as cooks/kitchen workers for Defendants' Stir Fry 88 restaurant included "food preparation work, cooking, cleaning the kitchen and other duties as assigned by the restaurant owners/management staff." (Dkt. No. 13 at ¶ 11). In performing these

duties, "Plaintiffs used and handled food items, cooking utensils, kitchen equipment, cleaning materials and other goods and materials that had previously been moved in or produced for commerce." *Id.* at ¶ 12. Defendants' argument that Plaintiffs' allegations fail to meet the handling clause is conclusory; they appeal to the definitions of commerce, goods, and materials and submit that no enterprise coverage exists because they "did not have employees handling, selling, or otherwise working on *goods or materials* that have been moved in or produced for *commerce* by any person." (Dkt. No. 14) (emphasis in original). Even setting aside whether any of the items identified by Plaintiffs' complaint fall within the definition of goods, no question exists that items used for cooking and cleaning qualify as "tools or other articles necessary for doing or making something," and that Defendants allegedly had cooks/kitchen workers handling these materials for the commercial purposes of the Stir Fry 88 restaurant. Plaintiffs' allegation that these materials had previously been moved in or produced for commerce suffices at this stage of the litigation to complete the statutory fit and plausibly bring Defendants within FLSA coverage under the handling clause—a determination supported by *Polycarpe* and authority on which it relies. The Eleventh Circuit pointed to an opinion letter from the DOL which directs that "coffee served, cleaning supplies utilized, cooking equipment (ranges[,] fryers, grills) operated, etc., that have been produced outside of or shipped by any person from outside the State" would subject a fast food retailer to coverage under the handling clause. Op. Letter, Fair Labor Standards Act (Dep't of Labor Jan. 22, 1997), 1997 WL 958726; *see Polycarpe*, 616 F.3d at 1225. The Eleventh Circuit found this view "in accord with our understanding of the handling clause; we imagine that, where a restaurant uses interstate cooking equipment as an article to perform its commercial activity of serving food, the restaurant is engaged with 'materials' that will subject the business to FLSA coverage." *Polycarpe*, 616 F.3d at 1225; *accord White*, 2013 WL 5430512, at *6. The Court concludes that Plaintiffs' First Amended Complaint adequately pleads the application of the handling clause to Defendants, and therefore need not consider Plaintiffs' alternative argument that their amended allegations also trigger the "engaged in commerce" clause. *See* (Dkt. No. 15).

### b. Annual Gross Volume of Sales

The second prong of the enterprise coverage definition requires that the enterprise have an annual gross volume of sales equaling at least $500,000. Relying on Defendant Liu's November 11, 2013 affidavit and attached 2012 tax return for the Defendant business, Defendants submit that Stir Fry 88's volume of sales for each quarter from its opening until Plaintiffs' last quarter of employment were as follows:

**2012:** [2nd Quarter-$19,435] [3rd Quarter-$125, 934] [4th Quarter-$142,444]

**2013:** [1st Quarter-$132,421] [2nd Quarter-$146,930] [3rd Quarter-$161,990]

(Dkt. No. 14, Exh. 1 at ¶ 5, Exh. A). Thus, Stir Fry 88's gross volume of sales was $287,813 for 2012 and $441,341 for 2013. (Dkt. No. 14, Exh. 1 at ¶ 6, Exh. A). Defendants' Motion argues that since their annual gross sales did not pass the statutory threshold in 2012, nor had they reached that threshold in 2013 by the time Plaintiffs left their employment, Defendants could not have been subject to FLSA coverage during the time that Plaintiffs were employed. (Dkt. No. 14). Plaintiffs' response correctly points out that the Court cannot consult the affidavit and attached tax return at the Rule 12(b)(6) stage, given

that the evidence is not referenced by Plaintiffs' complaint. (Dkt. No. 15); *see supra* n. 1. What the complaint does allege is that "[i]n each full quarter-year of operation, Defendants' gross receipts have exceeded $125,000"—an allegation not disproved by the evidence, with the exception of the first quarter of 2012. (Dkt. No. 13 at ¶ 13). Plaintiffs thus allege that "under the 'rolling quarters' method of computing gross receipts, Defendants have, at all times, been deemed to exceed $500,000 in annual gross receipts." *Id.* at ¶ 14. Plaintiffs further allege that "for the calendar year 2013, Defendants' gross annual receipts exceeded $500,000," a statement made even more plausible by Liu's representations regarding Stir Fry 88's volume of sales for the first three quarters of that year. *Id.* at ¶ 15.

In *Donovan v. I–20 Motels, Inc.*, 664 F.2d 957 (5th Cir.1981), the Fifth Circuit generally approved of the "rolling quarter" method described by the Secretary of Labor in 29 C.F.R. § 779.266. Under this method, "an employer determines if it is covered by the [FLSA] at the beginning of each quarter ... by calculating its annual dollar volume based on the sum of the four preceding quarters." *Donovan*, 664 F.2d at 958. The Fifth Circuit noted Congress's "express sanction" of the method as a means for enabling the employer to know whether or not to comply with the requirements of the FLSA, and determined that the method "is not to be set aside unless its application would make FLSA coverage more speculative, constantly fluctuating or predictably unfair." *Id.* at 958–59. Although *Donovan* did not consider application of the method in the context of a new business, Plaintiffs point to the Secretary's additional guidance that:

> [w]hen a new business is commenced the employer will necessarily be unable for a time to determine its annual dollar volume on the basis of a full 12–month

period. . . . [W]here doubt exists [as to whether the enterprise will have the requisite annual dollar volume], the gross receipts of the new business during the first quarter year in which it has been in operation will be taken as representative of its annual dollar volume . . . for purposes of determining its obligations under the Act in workweeks falling in the following quarter year period. Similarly, for purposes of determining its obligations under the Act in workweeks falling within ensuing quarter year periods, the gross receipts of the new business for the completed quarter year periods will be taken as representative of its annual dollar volume in applying the annual volume tests of the Act.

29 C.F.R. § 779.269. Plaintiffs have sufficiently pleaded that Defendants' gross receipts in the first quarter of its operation exceeded $125,000. Thus, under the Secretary's guidance, this representative figure would allow for the determination that Defendants' annual dollar volume would exceed $500,000, and that it would be subject to the FLSA "in workweeks falling in the following quarter year period." Defendants' evidence disputes Plaintiffs' allegation with respect to the first quarter of 2012, and can be tested through the discovery process and presented anew, if necessary, through a motion for summary judgment. Plaintiffs also allege, and Defendants' evidence does *not* dispute, that Stir Fry 88's sales volume exceeded $125,000 for each of the remaining quarters of operation. In such case, and again giving credence to Plaintiffs' allegation regarding the first quarter of 2012, the $500,000 annual sales volume would be presumed for all quarters of Plaintiffs' employment. Application of the Secretary's guidance to the alleged facts does not render FLSA coverage speculative, constantly fluctuating, or unfair: Plaintiffs allege that

the sales volume for each quarter consistently exceeded $125,000, and that the annual sales volume for 2013 met the $500,000 threshold. Therefore, the Court will apply the method and must concur with Plaintiffs that their amended pleading makes the existence of enterprise coverage plausible.

### III. Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Defendants' Second Motion to Dismiss under Rule 12(b)(6) is **DENIED.**